MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS’ MOTIONS FOR REMAND
 

 EDMUNDS, District Judge.
 

 Plaintiffs in these consolidated cases brought class-action suits in state court against Defendants Hoechst Aktiengesells-chaft, Hoechst Marion Roussel, Inc. (“Hoechst”), and Andrx Pharmaceuticals, Inc. (“Andrx”) alleging that Defendants have violated various state antitrust and related laws, have conspired and entered into arrangements that' have effectively prevented any lower-cost generic version of a prescription heart medication, known as Cardizem CD, from entering the United States marketplace, and have thus harmed Plaintiffs and the putative class members. Defendants removed the actions to federal court, and Plaintiffs’ motions for remand are presently before this Court in the following nine matters:
 
 [1]
 

 Case Mo: Case Name
 

 99-cv-73314 Pearl Bence Lowy v. Hoechst, et al.
 

 99-CV-73750 Aetna U.S. Healthcare, Inc. v. Hoechst, et al.
 

 99-cv-73667 Jan Gabriel v. Hoechst, et al.
 

 99-ev-73345 Larry S. Sizemore v. Hoechst, et al.
 

 99-cv-73981 Albert Eirieh v. Hoechst, et al.
 

 99-cv-74377 Shirlean Glover v. Hoechst, et al.
 

 99-cv-73845 Sunshine Pharmacy of NY, Inc. v. Hoechst, et al.
 

 99-ev-73713 D’Esposito v. Hoechst, et al.
 

 Case No, Case Name
 

 99-cv-73871 Galloway, Inc. v. Hoechst, et al.
 

 Each case is addressed individually. The discussion begins with the cases where Plaintiffs plainly allege unjust enrichment or admit that Plaintiff and the class are seeking restitution or disgorgement:
 
 Gabriel, Sunshine Pharmacy, Ei-rich
 
 and
 
 Glover.
 
 Next, the Court addresses the cases where the Plaintiffs complaint specifically pleads for less than the required jurisdictional threshold amount for diversity jurisdiction:
 
 Sizemore;
 
 and those where the Plaintiffs complaint does not clearly allege unjust enrichment or seek the equitable remedies of disgorgement or restitution:
 
 Galloway, Inc.
 
 and
 
 D’Esposito.
 
 Here, the Court addresses Defendants’ arguments that aggregation is proper with regard to Plaintiffs’ claims for injunctive relief, statutory damages, and attorneys fees. Finally, the Court addresses those cases where there is no diversity of citizenship and removal, if proper, must be based on the federal question grounds Defendants assert:
 
 Lowy
 
 and
 
 Aetna U.S. Healthcare, Inc.
 

 Plaintiffs’ motions for remand are DENIED in
 
 Gabriel, Sunshine Pharmacy, Eirieh, Glover, Sizemore, Galloway, Inc.,
 
 and
 
 D’Esposito
 
 because Plaintiffs’ complaints present integrated claims which satisfy the amount-in-controversy requirement for diversity jurisdiction.' Plaintiffs’ motions for remand are GRANTED in
 
 Lowy,
 
 and
 
 Aetna U.S. Healthcare, Inc.
 
 because the Court finds no basis for federal question jurisdiction.
 

 I. Standard of Review
 

 “Generally, a civil case brought in state court may be removed by a defendant to federal court if it could have been brought there originally.”
 
 Gafford v. General Elec. Co.,
 
 997 F.2d 150, 155 (6th Cir.
 
 *823
 
 1993). The burden of establishing federal jurisdiction rests “clearly upon the defendants as the removing party.”
 
 Alexander v. Electronic Data Systems Corp.,
 
 13 F.3d 940, 949 (6th Cir.1994). The court is required to “ ‘look to the complaint as it existed at the time the petition for removal was filed to determine’ the matter of federal jurisdiction raised by the defendant’s notice of removal.”
 
 Alexander,
 
 13 F.3d at 949 (quoting
 
 Cromwell v. Equicor-Equita-ble HCA Corp.,
 
 944 F.2d 1272, 1277 (6th Cir.1991)). The federal courts strictly construe removal petitions in a manner that resolves all doubts against removal.
 
 Her Majesty The Queen v. City of Detroit,
 
 874 F.2d 332, 339 (6th Cir.1989).
 

 II. Analysis
 

 A. Diversity Jurisdiction — Amount in Controversy Disputes
 

 Defendants assert that removal is proper here because the parties are completely diverse, and the amount in controversy exceeds the $75,000 statutory minimum under 28 U.S.C. § 1332. Other than in
 
 Lowy
 
 and
 
 Aetna U.S. Healthcare, Inc.,
 
 which are discussed below under federal question jurisdiction, Plaintiffs do not dispute that the parties are completely diverse but move for a remand asserting that Defendants cannot satisfy their burden of proving that the amount-in-controversy requirement under § 1332 is satisfied.
 

 1. General Principles
 

 a. Controlling Law.
 

 In multidistrict litigation such as this, “the binding precedent, if any, from the Sixth Circuit should be examined and, if none exists, an evaluation of other circuit law should be undertaken in order to make a reasoned decision. This multidistrict litigation, ..., deserves to have but one interpretation of federal law.”
 
 In re Air Crash at Detroit Metro. Airport,
 
 791 F.Supp. 1204, 1213 (E.D.Mich.1992). Although state law will dictate the nature of the claim asserted and what amounts are actually at stake, federal law will determine whether the amounts exceed the statutory minimum necessary for diversity jurisdiction under 28 U.S.C. § 1332.
 
 See
 
 15
 
 Moore’s Federal Practice,
 
 § 102.101 (Matthew Bender 3d ed).
 

 b. Burden of Proof.
 

 The defendant’s burden of proof regarding the amount in controversy varies depending on whether and how much the plaintiff seeks in damages.
 
 See Gafford v. General Elec. Co.,
 
 997 F.2d 150. If the plaintiffs complaint specifies that she is seeking an unspecified amount in damages, then the “ ‘preponderance of the evidence’ (‘more likely than not’) test” will apply, and the Defendant must show, by a preponderance standard, that the plaintiff’s allegations, if properly proved, will justify an award in excess of the jurisdictional minimum.
 
 Gafford,
 
 997 F.2d at 158. If the plaintiffs complaint specifies that she is seeking an amount less than the amount required for diversity jurisdiction, then the defendant must show by a “substantial likelihood” or “reasonable probability” that the plaintiffs claims meet the amount-in-controversy requirement.
 
 See Gafford,
 
 997 F.2d at 157-58;
 
 Crosby v. America Online, Inc.,
 
 967 F.Supp. 257, 261 n. 2 (N.D.Ohio 1997)
 
 [2]
 

 
 *824
 
 c. Aggregation of Class Action Claims
 

 Generally, to permit removal of a class action lawsuit under the diversity jurisdiction statute, 28 U.S.C. § 1332, a defendant must show that the jurisdictional amount is satisfied by each class member, and the class members’ claims may not be aggregated.
 
 Zahn v. International Paper Co.,
 
 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). “The general rule is that while separate and distinct claims may not be aggregated, aggregation is permissible when ‘two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.’ ”
 
 Sellers v. O’Connell,
 
 701 F.2d 575, 579 (6th Cir.1983) (quoting
 
 Snyder v. Harriss,
 
 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)). The Sixth Circuit has observed that “[a]n identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased.”
 
 Sellers,
 
 701 F.2d at 579. Accordingly, a determination whether a plaintiffs claim may be aggregated or not requires examination of the nature of the right the plaintiff is asserting.
 

 d. Overview of the Parties Arguments
 

 Defendants assert that removal is proper and diversity jurisdiction exists because the various Plaintiffs claims for unjust enrichment, injunctive relief, statutory damages, and attorneys’ fees may be considered in the aggregate when determining whether the amount in controversy requirement is satisfied. Plaintiffs argue to the contrary.
 

 2. Specific Amount-in-Controversy Disputes
 

 a. Where Unjust Enrichment and/or Disgorgement Plainly Asserted:
 
 Gabriel, Sunshine Pharmacy, Ei-rich
 
 and
 
 Glover
 

 In each of these four cases, there is no dispute that the parties are completely diverse for the purposes of 28 U.S.C. § 1332 and that the Defendants are not citizens of the forum state as required for removal jurisdiction under 28 U.S.C. § 1441(b). Rather, the dispute centers on
 
 *825
 
 the question whether each of these actions involves an amount in controversy that exceeds the $75,000 jurisdictional minimum necessary for diversity jurisdiction. In each, Plaintiff did not specify the amount of damages sought. Accordingly, Defendants need only show, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount.
 
 Gafford,
 
 997 F.2d at 158.
 

 Consistent with other consolidated cases in this multidistrict litigation, the parties likewise do not dispute “the general rule that each member of the plaintiffs class must independently satisfy the jurisdictional amount-in-controversy requirement to meet the elements of 28 U.S.C. § 1332.”
 
 Aetna U.S. Healthcare, Inc. v. Hoechst, et al,
 
 48 F.Supp.2d 37, 40 (D.D.C.1999) (citing
 
 Zahn v. International Paper Co.,
 
 414 U.S. 291, 294-95, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) and
 
 Snyder v. Harris,
 
 394 U.S. 332, 336, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)). Rather, “both sides focus on what has been characterized as an exception to this general rule. As both
 
 Zahn
 
 and
 
 Snyder
 
 state, the value of the claims of the entire class can be considered collectively against the statutory threshold when the members of the class ‘unite to enforce a single title or right in which they have a common and undivided interest.’ ”
 
 Aetna U.S. Healthcare,
 
 48 F.Supp.2d at 40-41 (quoting
 
 Snyder,
 
 394 U.S. at 335, 89 S.Ct. 1053;
 
 Zahn,
 
 414 U.S. at 294, 94 S.Ct. 505). Thus, to allow aggregation, Plaintiffs must allege an integrated claim. The Sixth Circuit has observed that “[a]n identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased.”
 
 Sellers v. O’Connell,
 
 701 F.2d 575, 579 (6th Cir.1983).
 

 Defendants argue that Plaintiffs here have asserted claims for unjust enrichment and demand that Defendants disgorge tens of millions of dollars to the class. They further argue that such claims are properly construed as “integrated claims” that satisfy the amount-in-controversy requirement. This Court agrees. The
 
 Gabriel, Sunshine Pharmacy, Eirich
 
 and
 
 Glover
 
 complaints allege claims for unjust enrichment or seek disgorgement of the tens of millions of dollars Defendant Hoechst allegedly paid to Andrx in connection with the HoechsU-Andrx Agreement, and thus assert “an integrated claim arising from a common right of the class that can be collectively used to satisfy the $75,-000 amount-in-controversy requirement.”
 
 Aetna U.S. Healthcare,
 
 48 F.Supp.2d at 39-40 (D.D.C.1999).
 

 (1) Jan Gabriel v. Hoechst, Case No. 99-cv-73667
 

 Paragraphs 103-108 of Plaintiff
 
 Gabriel’s
 
 complaint allege a cause of action for unjust enrichment against all Defendants, allege that it would be inequitable for Defendants to be permitted to retain any of the proceeds of the Hoeehst-Andrx Agreement, and demand Defendants’ “disgorgement to the Class of all such monies acquired through defendants’ illegal and inequitable conduct.” Illinois law recognizes an independent cause of action based on a theory of unjust enrichment where a plaintiff alleges “‘that the defendant has unjustly retained a benefit to the plaintiff’s detriment, and that defendant’s retention of the benefit violates the fundamental principles of justice, equity, and good conscience.’ ”
 
 Peddinghaus v. Peddinghaus,
 
 295 Ill.App.3d 943, 948, 230 Ill.Dec. 55, 692 N.E.2d 1221, 1225 (Ill.App.1998) (quoting
 
 HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,
 
 131 Ill.2d 145, 160, 137 Ill.Dec. 19, 545 N.E.2d 672 (1989)).
 

 As observed by this Court and the United States District Court for the District of Columbia in
 
 Aetna, U.S. Healthcare, Inc. v. Hoechst, et al.,
 
 48 F.Supp.2d at 41, when examining a substantially similar unjust enrichment claim seeking disgorgement, the amount-in-controversy requirement is satisfied here because the claim asserted is an integrated one and “the disgorgement remedy would inure to
 
 *826
 
 the benefit of the class rather than vindicate any alleged violations of individual rights.”
 
 Id.
 
 at 41. As in the District of Columbia case, Plaintiffs allegation of disgorgement against Andrx here “does not depend, rely upon, or arise out of the vindication of individual rights of the putative class members. In the words of the complaint, disgorgement is appropriate because ‘[i]t would be inequitable for Andrx to be permitted to retain any of the proceeds of the Hoechst-Andrx Agreement.’”
 
 Id.
 
 at 42 (quoting Plaintiffs Complaint 1í 138).
 
 [3]
 
 This Court agrees with the
 
 Aetna
 
 Court’s conclusion that, pursuant to the allegations in Plaintiffs complaint, (1) Plaintiff is seeking, on behalf of the putative class as a whole, to disgorge the tens of millions of dollars paid to Andrx in connection with the Hoechst-Andrx Agreement on the ground that it was unjustly enriched by such payment; (2) this claim is in addition to and separate from individual claims for compensation for overpayments to Defendant Hoechst; (3) “the disgorgement remedy would inure to the benefit of the class rather than vindicate any alleged violations of individual rights,”
 
 Id.
 
 at 41; and (4) “[i]f any given plaintiff does not collect his, her, or its share, then it does not change the amount of profits of which defendants must be disgorged. Thus, according to the complaint, the plaintiff class has a collective right to a disgorgement in the amount of the unjust enrichment, and that amount does not depend upon the number of plaintiffs.”
 
 Id.
 
 Plaintiff, as alleged in the complaint, seeks to compel Andrx to pay to the Class the full amount it has received in connection with the Hoechst-Andrx Agreement, regardless of the actual damages proved by each plaintiff and regardless of the number of plaintiffs in the purported class. The possible recovery on this claim is either all or nothing. It is therefore an integrated claim for an amount that easily satisfies the jurisdictional requirement for diversity jurisdiction. This Court made similar observations and reached the same result in
 
 Zucarrini v. Hoechst, et al.,
 
 Case No. 98-cv-74043.
 

 (2) Sunshine Pharmacy
 

 Plaintiffs complaint in this matter similarly alleges a claim of unjust enrichment and seeks disgorgement. Paragraphs 64-69, of the complaint allege a cause of action for unjust enrichment under New York common law against all Defendants, allege that it would be inequitable for Defendants to be permitted to retain any of the proceeds of the Hoechst-Andrx Agreement, and demand “that defendants disgorge all such monies acquired through defendants’ illegal and inequitable conduct.” Complaint K 69. As to this unjust enrichment cause of action, Plaintiff seeks the following relief: “that the jury find and that this Court adjudge and decree that all defendants have been unjustly enriched by their illegal deceptive, unfair and unconscionable acts of unfair competition and restraint of .trade, and that such defendants be required to disgorge to plaintiff
 
 and the Class
 
 all amounts by which they have been unjustly enriched, plus interest and costs”. Complaint, Prayer for Relief, H B (emphasis added). Under New York law, a cause of action for unjust enrichment “requires the court to determine whether it is against equity and good conscience to permit defendant to retain what is sought to be recovered.”
 
 Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chipetine,
 
 221 A.D.2d 284, 286, 634 N.Y.S.2d 469, 471 (1995) (internal quotes and citation omitted). Because the unjust enrichment claim in the
 
 Sunshine Pharmacy
 
 complaint seeks disgorgement and is substantially similar to the claims discussed above, this Court likewise concludes that it states an integrated claim that satisfies the amount-in-controversy requirement necessary for diversity jurisdiction.
 

 (3) Albert Eirich
 

 The amount-in-controversy requirement is also satisfied in
 
 Eirich.
 
 Plaintiffs com
 
 *827
 
 plaint here also alleges a similar claim for unjust enrichment and seeks disgorgement of the $40 million paid to Andrx pursuant to the Hoechst-Andrx Agreement. Paragraphs 101-106 of the complaint allege a cause of action for unjust enrichment against all Defendants, allege that it would be inequitable for Defendants to be permitted to retain any of the proceeds of the Hoechst-Andrx Agreement, and demand that Defendants “disgorge all such monies acquired through Defendants’ illegal and inequitable conduct.” Complaint f 106. Under Wisconsin law, a cause of action “for recovery based upon unjust enrichment is grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust. Accordingly, unjust enrichment is based on equitable principles, with damages being measured by the benefit conferred upon the defendant, not the plaintiffs loss.”
 
 Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.,
 
 206 Wis.2d 158, 188, 557 N.W.2d 67, 79-80 (1996) (internal quotes and citations omitted).
 

 (4) Shirlean Glover
 

 Plaintiffs complaint alleges a claim of unjust enrichment under North Carolina common law and seeks restitution from Defendants. Paragraphs 144-149 of the complaint, which allege the cause of action for unjust enrichment, assert that:
 

 145. Plaintiff and Class members have conferred a benefit upon the Hoechst Defendants by virtue of, and the Hoechst Defendants have knowingly accepted and benefitted from, the overcharges the Hoechst Defendants have been able to levy on plaintiff and Class members for Cardizem CD. The benefit conferred and accepted was not gratuitous in nature.
 

 146. Defendant Andrx has benefitted from the unlawful acts alleged in this Complaint to the extent of the payments it has received and will continue to receive under the Hoechsb-Andrx Agreement. Funds for such payments by Hoechst are
 
 derived in part
 
 from plaintiffs and Class members’ overpayment of Cardizem CD. Plaintiff and Class members have conferred a benefit upon Defendant Andrx by virtue of, and Defendant Andrx has knowingly accepted and benefitted from, the overcharges the Hoechst Defendants have been able to levy on plaintiff and Class members for Cardizem CD
 
 in that such overpayment is the source and/or motivation for the payments
 
 made (and to be made) to Defendant Andrx under the Hoechst-Andrx Agreement. The benefit conferred and acceptable was not gratuitous in nature.
 

 147. It is
 
 inequitable
 
 for Defendant Andrx to be permitted to retain any of the proceeds of the Hoechst-Andrx Agreement
 
 to the extent such funds were derived from plaintiffs and Class members’ overpayment
 
 for Cardizem CD.
 

 148. It is
 
 inequitable
 
 for the Hoechst Defendants to be permitted to retain any portion of the overpayment for Cardizem CD by plaintiff or the Class members which is derived from their unfair and unconscionable methods, acts and trade practices, including but not limited to the Hoechst-Andrx Agreement and other acts alleged herein regarding efforts to prevent or limit the introduction of QD Diltiazem products and generic Cardizem CD.
 

 149. Plaintiff and Class members are entitled to
 
 restitution
 
 from defendants
 
 to the extent of their over-payments.
 

 Complaint ¶¶ 145-149 (emphasis added). Plaintiff also prays for relief that includes
 
 *828
 
 treble damages for statutory violations, punitive damages, declaratory and injunc-tive relief, and “restitution of the amounts overpaid by them for Cardizem CD during the Class Period”. Complaint, Prayer for Relief If f.
 

 Although Plaintiff alleges a claim for unjust enrichment under North Carolina law, she attempts to limit recovery under this claim to the amount each member of the class overpaid for their Cardizem CD prescription. Under North Carolina law, however, an unjust enrichment claim is not limited to a plaintiffs losses. It is not designed to compensate a plaintiff for losses it suffered; rather it is designed to force a defendant to disgorge benefits that it would be unjust for it to keep. North Carolina law distinguishes between restitution recovery and damages recovery and observes that the damages award is designed to compensate a plaintiff for her loss whereas a restitution award is designed to deprive a defendant of benefits that in equity and good conscience the defendant ought not to keep. Plaintiffs unjust enrichment claim, and the determination whether it presents an integrated claim, must be evaluated with these principles in mind.
 

 Under North Carolina law, “unjust enrichment” has been defined as:
 

 a legal term characterizing the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself [or herself] at the expense of another.
 

 Adams v. H.L. Moore,
 
 96 N.C.App. 359, 362, 385 S.E.2d 799, 801 (1989) (quoting
 
 Ivey v. Williams,
 
 74 N.C.App. 532, 534, 328 S.E.2d 837, 838-39 (1985)).
 

 The North Carolina courts have also observed that it is not necessary in all unjust enrichment cases “that the plaintiff must have actual damages.”
 
 Booher v. Frue,
 
 86 N.C.App. 390, 393, 358 S.E.2d 127, 129 (1987),
 
 aff'd,
 
 321 N.C. 590, 364 S.E.2d 141 (1988). This is because “[Restitution recovery and damages recovery are based on entirely different theories .... [T]he main purpose of the damages award is some rough kind of compensation for the plaintiffs loss. This is not the case with every kind of money award, only with the damages award. In this respect, restitution stands in direct contrast to the damages action. The restitution claim, on the other hand, is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep. A plaintiff may receive a windfall in some cases, but this is acceptable in order to avoid any unjust enrichment on the defendant’s part. The principle of restitution is to deprive the defendant of benefits that in equity and good conscience he ought not to keep ... even though plaintiff may have suffered no demonstrable losses.”
 
 Booher,
 
 86 N.C.App. at 393-94, 358 S.E.2d at 129 (internal quotes and citations omitted).
 

 Thus, if it is shown that, in equity and good conscience, Defendant Andrx should not keep the tens of millions of dollars it has been paid in connection with the Hoechst/Andrx Agreement, then under North Carolina law, it will be disgorged of that entire amount. Under equitable principles, it makes no sense to say that it would be unjust for a defendant to keep a sum of money and then limit the amount disgorged to only that amount claimed by individual plaintiffs. As observed by the .Sixth Circuit in
 
 Sellers v. O’Connell,
 
 701 F.2d 575, 579 (6th Cir.1988), “[a]n identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased.” Here, the entire amount would be disgorged, and if any one class member does not collect his or her share, then the remaining plaintiffs’ shares will be increased. Plaintiff cannot change the integrated nature of her unjust enrichment claim by
 
 *829
 
 limiting the share she wishes to take from the disgorged amount. This Court finds that the unjust enrichment claim asserted in the
 
 Glover
 
 complaint is an integrated claim that satisfies the amount-in-controversy requirement.
 

 b. Where Unjust Enrichment Alleged and Disgorgement/Restitution Sought but Plaintiff Expressly Disclaims Damages in Excess of $75,000:
 
 Sizemore
 

 (I) Larry S. Sizemore.
 

 The
 
 Sizemore
 
 action was originally filed in Tennessee state court and brought on behalf of a putative class of consumers in fifteen different jurisdictions including Tennessee, Michigan, California, Maine, Wisconsin, Minnesota, Mississippi, Alabama, New Mexico, South Dakota, North Carolina, Kansas, West Virginia, North Dakota, and the District of Columbia.
 
 See Sizemore
 
 Complaint H 1. It alleges violations of Tennessee’s Trade Practices and Consumer Protections Acts as well as violations of similar antitrust laws in the 14 additional jurisdictions listed above.
 
 Id.
 
 Similar to the other complaints in this multidistrict litigation, Plaintiff alleges that Defendants’ conduct has resulted in “unjust enrichment inuring to the benefit of the Hoechst Defendants, and unjust enrichment to Andrx.”
 
 Id.
 
 at ¶ 65. Plaintiff prays for relief “awarding plaintiff and all members of the Class compensatory and other legal damages in an amount which may be proven at trial, together with interest thereon, including, but not limited to, treble damages pursuant to Tenn.Code Ann. § 47-18-109(a)(3)”, costs, expenses, reasonable attorneys fees, and “such other and further relief to which plaintiff and the class are entitled.”
 
 Id.,
 
 Prayer for Relief ¶ 3-6. Plaintiff also seeks to avoid removal by pleading for less than the jurisdictional amount. Plaintiffs complaint expressly states that “the amount in controversy as to plaintiff individually and each class member individually does not exceed $74,999, including interest, and award of attorneys’ fees and costs,
 
 disgorgement,
 
 restitution or treble damages” and Plaintiff expressly “disclaims for himself any recovery greater than $74,999 (including interest, any award of attorneys’ fees and costs,
 
 disgorgement,
 
 restitution or treble damages)”. Sizemore Complaint If 6 (emphasis added). In his Reply, Plaintiff acknowledges that he and the Class are seeking disgorgement.
 
 See
 
 Plfs Reply at 10-14.
 
 [4]
 

 Because Plaintiff has expressly claimed a damage amount that is less than the jurisdictional minimum, Defendants have a higher standard of proof. Defendants must show that there is a substantial likelihood or reasonable probability that the amount in controversy actually will exceed the jurisdictional threshold.
 
 See Gafford,
 
 997 F.2d at 157-158. The burden is satisfied here.
 

 Plaintiff argues that Defendants cannot satisfy the amount-in-controversy requirement because: (1) Plaintiff and each class member plead an amount less than the $75,000 jurisdictional minimum; and (2) there is no common, integrated claim because each individual disgorgement claim is tied to the unlawful overcharges paid by each, “indirectly to the Hoechst defendants which Hoechst shared with Andrx pursuant to the Hoechst/Andrx Agreement.”
 
 See
 
 Plaintiffs Reply at 10-14. This Court disagrees with Plaintiffs arguments.
 

 First, Plaintiffs complaint does not so limit its unjust enrichment allegation and concomitant disgorgement demand as Plaintiff does in his Reply. Because Plaintiffs complaint can be construed as seeking disgorgement of the amounts paid to Andrx under the Hoechst/Andrx Agreement based on the theory of unjust enrich
 
 *830
 
 ment, this Court concludes that it asserts an integrated claim that satisfies the amount-in-controversy requirement under 28 U.S.C. § 1332.
 

 When the nature of the unjust enrichment/disgorgement claim is examined under the law of the various jurisdictions under which Plaintiff brings this action, it becomes apparent that Plaintiffs request for disgorgement of the tens of millions of dollars paid pursuant to the Hoechst/ Andrx Agreement constitutes an integrated claim in which Plaintiff and the putative class possess a common and undivided interest. To illustrate, under Wisconsin law, which is one of the jurisdictions included in this action, the courts recognize that “unjust enrichment is based on equitable principles, with damages being measured by the benefit conferred upon the defendant, not the plaintiffs loss.”
 
 Management Computer Services,
 
 557 N.W.2d at 79-80. Likewise, under North Carolina law, which is also one of the jurisdictions included in this action, the courts distinguish between restitution recovery for unjust enrichment and compensatory damages because they are premised on entirely different theories. “[T]he main purpose of the damage award is some rough kind of compensation for the plaintiffs loss. This is not the case with every kind of money award, only with the damages award.... The restitution claim, on the other hand, is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep. A plaintiff may receive a windfall in some cases, but this is acceptable in order to avoid any unjust enrichment on the defendant’s part. The principle of restitution is to deprive the defendant of benefits that in equity and good conscience he ought not to keep ... even though plaintiff may have suffered no demonstrable losses.”
 
 Booher v. Frue,
 
 86 N.C.App. 390, 393-94, 358 S.E.2d 127, 129 (1987) (internal quotes and citations omitted).
 

 Finally, the Court observes that an argument, similar to Plaintiffs here, was recently rejected by the District Court for the Eastern District of Tennessee in a matter that is now consolidated in this multidistrict litigation,
 
 Eugenia Wynne Sams v. Hoechst, et al.,
 
 Tenn. Case No. 2:98-cv-348, Our Case No. 99-cv-73190. In
 
 Sams,
 
 the plaintiffs complaint has a similar clause expressly limiting the damage amount per plaintiff to less than the $75,000 jurisdictional minimum. The court denied Plaintiffs motion for a remand observing that, although “[tjhere is nothing inherently improper in avoiding federal diversity jurisdiction by seeking a recovery below the jurisdictional amount”, aggregation for jurisdictional purposes was permissible here because plaintiffs “claim for disgorgement, which obviously involves tens of millions of dollars, is the type of integrated claim which satisfies the jurisdictional amount in controversy despite the plaintiffs disclaimers.”
 
 Sams,
 
 Tenn. Case No. 2:98-cv-348, 4/9/99 Order at 5. The Tennessee District Court also denied a motion for reconsideration of its April 9, 1999 order denying Plaintiffs motion for a remand.
 
 See Sams,
 
 Tenn. Case No. 2:98-cv-348, 5/20/99 Order. Plaintiff urged reconsideration arguing “that her disgorgement claim does not satisfy the amount in controversy requirements because each class member’s right to a share of this money would be tied to his or her individual compensatory damages for drug over-payments.”
 
 Id.
 
 at 3. The court rejected the plaintiffs argument, observed that “the disgorgement of illegal profits sought in this case is over and above any fund for payment of compensatory or punitive damages”, and concluded that, “[i]n this Court’s judgment, it must, of necessity, produce a common fund in which the individual class members would hold an undivided, group right or interest entirely unrelated to their right to recover damages.”
 
 Id.
 
 at 4-5.
 

 c. Where Unjust Enrichment and/or Disgorgement Claims Are Not Plainly Asserted:
 
 Galloway, Inc.
 
 and
 
 Joseph D’Esposito
 

 In both
 
 Galloway, Inc.
 
 and
 
 DEsposito,
 
 there is no express claim for unjust enrich-
 
 *831
 
 merit and/or disgorgement. In
 
 DEsposi-to,
 
 the Plaintiffs Reply asserts that Plaintiff and the class are not alleging a claim for unjust enrichment and are not seeking disgorgement or restitution. In
 
 Galloway, Inc.,
 
 Plaintiffs do not clarify their intent. Because these cases are closer than those addressed above, the Court explores Defendants’ additional arguments in support of their claim that each action involves an amount in controversy in excess of $75,000 as required under 28 U.S.C. § 1332. These include arguments that Plaintiffs’ claims for statutory damages, statutory attorneys’ fees, and injunctive relief can be aggregated so as to satisfy the amount-in-controversy requirement. The Court finds that, although Plaintiffs’ claims for statutory damages and attorneys’ fees cannot be aggregated, the claims for injunctive relief can be aggregated and thus the amount-in-controversy requirement is satisfied in these two cases.
 

 (1) Galloway, Inc.
 

 The
 
 Galloway, Inc.
 
 Complaint, filed February 17, 1999 as a class action suit by pharmacies and other retail sellers, seeks redress “under the laws of the State of California,
 
 and all other jurisdictions that recognize the standing of indirect purchasers to recover damages
 
 based on combinations or conspiracies in restraint of trade for defendants’ illegal course of conduct in restraining competition”. Complaint It 1 (emphasis added). Plaintiffs complaint alleges that Defendants violated Sections 16720 and 16726 of the California Business and Professions Code. There is no common law claim for unjust enrichment and no specific claim for equitable relief. There are, however, allegations that: (1) Plaintiff and the Class are victims of the Hoechst-Andrx collusive and unlawful conduct (f 62); (2) the Hoechst-Andrx conduct “has resulted in overpayment by Plaintiffs and the Class of many millions of dollars for Cardizem CD, and a concomitant gain and unjust enrichment inuring to the benefit of Hoechst and Andrx” (It 63); (3) Plaintiffs and the Class are persons injured in their business or property by reason of Defendants’ violations and are authorized to bring suit pursuant to Section 16750 of the California Business and Professions Code (It 76); and (4) Plaintiffs and the members of the Class have each been harmed and injured in their business and property by Defendants’ actions, including among other things, loss of monies paid for the artificially inflated pharmaceuticals (It 78). Plaintiffs pray for damages, injunctive and declaratory relief. The damage claim is broad: “That damages be granted according to proof, and that Plaintiffs and the Class be awarded treble damages or statutory damages, where applicable, attorneys’ fees, costs and disbursements.” Complaint, Prayer for Relief It (d). There is also a claim for “further relief as the Court may deem just and proper under the circumstances.”
 
 Id.
 
 at 11 (g).
 

 Defendants assert that Plaintiffs complaint, Paragraph 63, alleges Defendants were unjustly enriched by their illegal conduct, and thus, this Court should construe that allegation as a claim for unjust enrichment seeking disgorgement of the tens of millions of dollars paid to Andrx in connection with the Hoechst/Andrx Agreement.
 
 See
 
 Andrx Response at 8. Defendants also emphasize the fact that, even if disgorgement or a fluid recovery fund may not be available under § 16750 of the California Business and Professions Code, disgorgement may be available under one of the other jurisdictions under which Plaintiffs bring their claims.
 

 (2) Joseph D’Esposito
 

 The
 
 DEsposilo
 
 Complaint, filed February 22, 1999 in New York state court, alleges an antitrust class action brought by New York purchasers of Cardizem CD against Defendants for violations of New York General Business Law § 340 (the “Donnelly Act”). Specifically, the Complaint alleges two causes of action: violation of the Donnelly Act and an action for
 
 *832
 
 injunctive relief. Paragraphs 116-117 assert that “[a]ll Cardizem CD purchasers are the intended, foreseeable, and direct victims of [the described] collusive and unlawful conduct by the Hoechst Defendants and Andrx, and as a result,” they have sustained and will continue to sustain economic damages “attributable to this illegal conspiracy in restraint of trade” in the form of “overpayment of tens of millions of dollars for Cardizem CD.” Paragraph 123 further alleges that Andrx has converted the alleged monopoly “into a $40 million per year windfall for which it is required to do nothing.” In his Prayer for Relief, Plaintiff seeks, among other things, treble damages, an injunction “permanently enjoining defendants from continuing to engage in the unlawful conduct alleged”, reasonable attorneys fees, and “such other relief” as the court may deem just and proper under the circumstances. D’Espo-sito Complaint, Prayer for Relief, IfII c, d, f, and g.
 

 Plaintiff does not allege a claim for unjust enrichment or seek disgorgement or restitution with respect to the tens of millions of dollars allegedly paid to Andrx by Hoechst in connection with the Hoechst/ Andrx Agreement. Nonetheless, Defendants insist that Plaintiffs complaint alleges such a claim. Plaintiffs Reply, however, unequivocally states that the complaint contains no claim for unjust enrichment, nor any demand for disgorgement.
 
 See
 
 Plf s Reply at 2 and 4.
 

 Defendants also argue that removal is proper here because Plaintiffs’ claims for statutory damages, attorneys’ fees, and in-junctive relief should be aggregated when considering whether the amount in controversy requirement is satisfied. The Court explores these arguments below.
 

 d. Argument that Claims for Injunc-tive Relief, Statutory Damages, and Attorneys’ Fees Can Be Aggregated:
 
 Galloway, Inc.
 
 and
 
 D’Esposito
 

 While it is true that potential awards of injunctive relief, statutory damages, and attorneys’ fees can be added to compensatory damages and considered in determining whether the amount-in-controversy requirement is met as to each Plaintiff, the pivotal question here is whether any of these may be aggregated instead of being measured pro rata.
 
 See Crosby,
 
 967 F.Supp. at 261 (citing
 
 Clark v. Nat’l Travelers Life Ins. Co.,
 
 518 F.2d 1167, 1168 (6th Cir.1975) and
 
 Sellers v. O’Connell,
 
 701 F.2d 575, 579 (6th Cir. 1983)). If they can be aggregated, then Defendants will easily satisfy their burden as to the amount-in-controversy requirement. This Court concludes that, although the claims for statutory damages and attorneys’ fees at issue here should not be aggregated, the claims for injunctive relief should be aggregated.
 

 1. Statutory Damages.
 

 In the
 
 Galloway, Inc.
 
 action, Plaintiffs seek statutory damages. They assert, however, that Defendants have not and cannot meet their burden and show the amount in controversy requirement is satisfied. Despite the “many millions of dollars” that “Plaintiffs and the Class overpaid for their prescription drugs,” Plaintiffs argue, this amount “breaks down into only thousands per Class member. For example, if the overcharge during the Class Period amounted to $100,-000,000, and there were 10,000 Class members throughout California and the relevant jurisdictions, then prorated damages would amount to $10,000 per Class member. Even trebling this amount and adding prorated attorneys’ fees and in-junctive relief would result in an average loss per Class member of about one-half the jurisdictional minimum.” Plaintiffs Br. at 9. This Court agrees that Defendants have not met their burden here.
 

 Defendants do not attempt to show that the each Class member’s statutory damages will Carry it over the required jurisdictional threshold amount. They do not explain why this statutory damage claim
 
 *833
 
 should be construed as an “integrated” claim; i.e., one where two or more plaintiffs have united to enforce a common and undivided interest, as opposed to separate and distinct claims based on each Plaintiff and class members’ overpayments. Rather, they merely assert that statutory damages of this sort are punitive in nature and thus should be aggregated like some courts have aggregated punitive damages. They rely for support on decisions from the Fifth and Eleventh Circuits which allowed the aggregation of punitive damages in a class action suit after examining the state law basis for the punitive damage claim and observing that such damages were not awarded to compensate plaintiffs for individual losses but rather were awarded to serve a broader societal purpose of punishing and deterring the defendant’s unlawful conduct towards all of the class members.
 
 See Tapscott v. MS Dealer Serv. Corp.,
 
 77 F.3d 1353, 1358-59 (11th Cir.1996) (applying Alabama law);
 
 Allen v. R & H Oil & Gas Co.,
 
 63 F.3d 1326, 1333 (5th Cir.1995) (applying Mississippi law).
 
 [5]
 
 This Court finds Defendants arguments for aggregating the claimed statutory damages unpersuasive.
 

 Defendants fail to discuss the state law which creates Plaintiffs’ right to statutory damages and whether that law is designed to serve a broad societal purpose (possibly justifying aggregation) or whether it is designed to serve a narrower individual remedial purpose. The United States District Court for the Northern District of California recently observed that similar allegations in a related case, brought pursuant to the same California Business and Professional Code sections at issue here, required the Court to look to § 16750 for available remedies.
 
 See Betnor Inc. v. Hoechst, el al.
 
 and
 
 Aetna/US Health Care, Inc. v. Hoechst, et al.,
 
 California Case Nos. 98-3609 and 98-4729, 4/14/99 Mem. and Order Denying Plaintiffs motion for remand, at 9-10. The
 
 Betnor
 
 Court further observed that § 16750 allows treble damages, injunctive relief, attorneys’ fee and costs but there is no mention of punitive damages as an available remedy.
 
 Id.
 
 Accordingly, the Court found punitive damages were not available and thus there was no foundation for the defendants’ aggregation argument.
 
 Id.
 
 Likewise, there is no foundation for Defendants’ aggregation argument here.
 

 2. Attorney Fees
 

 In both the
 
 Galloway, Inc.
 
 and
 
 D’Espo-sito
 
 actions, Plaintiffs seek statutory attorneys’ fees. Defendants argue that, because the attorneys’ fees in these complex class actions are likely to exceed $75,000, the amount-in-controversy requirement is satisfied. Defendants’ argument assumes that the attorneys’ fees may be aggregated. There is a split in the courts on the issue whether attorneys’ fees may be aggregated. Some courts allow aggregation by applying the Eleventh Circuit’s analysis in
 
 Tapscott
 
 which permits the aggregation of state law claims for punitive damages when there is a recognized broad societal purpose served by such an award.
 
 See Howard v. Globe Life Ins. Co.,
 
 973 F.Supp. 1412, 1419-20 (N.D.Fla.1996);
 
 In re Abbott Labs.,
 
 51 F.3d 524, 526 (5th Cir.1995) (where the Court observed that the Louisiana statutes at issue attributed all of a class’s attorneys’ fees to the named plaintiffs, thus allowing aggregation and satisfaction of the amount-in-controversy requirement for diversity jurisdiction).
 
 *834
 
 Others do not allow aggregation of attorneys’ fees and hold instead that the fees must be pro rated across the plaintiff class because the underlying claims are separate and distinct.
 
 See Goldberg v. CPC Int’l, Inc.,
 
 678 F.2d 1365, 1367 (9th Cir. 1982);
 
 Lauchheimer v. Gulf Oil,
 
 6 F.Supp.2d 339, 345-346 (D.N.J.1998) (disagreeing with the rationale and result in
 
 Howard v. Globe Life Ins. Co.,
 
 973 F.Supp. 1412 (N.D.Fla.1996));
 
 Crosby,
 
 967 F.Supp. at 261-62.
 

 This Court finds the better approach to be that which “decline[s] to treat prospective attorneys’ fees in class actions as a bootstrap for establishing federal jurisdiction.”
 
 Colon v. Rent-A-Center, Inc.,
 
 13 F.Supp.2d 553, 562 (S.D.N.Y.1998). “The better approach is to allocate to each Plaintiff, for jurisdictional purposes only, his or her individual and pro rata share as a class member of the total attorney’s fees.”
 
 Lauchheimer,
 
 6 F.Supp.2d at 346. Accordingly, to satisfy their burden here, Defendants must show, by a preponderance standard, that the attorneys’ fees will exceed $75,000 per class member. Defendants have not met this burden.
 

 3. Injunctive Relief
 

 Both the
 
 Galloway, Inc.
 
 and
 
 D’Esposito
 
 complaints seek an injunction enjoining Defendants from enforcing the arrangements and conspiracies described in the complaints, including enforcement of the Hoechst/Andrx Agreement, and enjoining Defendants from continuing violations as alleged therein. Defendant Andrx argues that, if an injunction is granted, it will cost it more than the $75,000 jurisdictional threshold amount to comply with it because they will no longer be able to reap the benefits (in the tens of millions of dollars) it would otherwise receive under the Hoechst-Andrx Agreement or under the license it was granted in that same agreement regarding the Hoechst patents.
 
 [6]
 
 Plaintiffs argue that the Court cannot value the injunctive relief from Defendants’ viewpoint, and even if it does, Defendants cannot consider the value of agreements Plaintiffs allege are unlawful, and Defendants cannot aggregate their costs of complying with Plaintiffs requested injunctive relief. This Court is not persuaded by Plaintiffs’ arguments. The Court rather follows the legal authority which evaluates the cost of an injunction from the viewpoint of either the plaintiff or the defendant, considers the costs of compliance Defendants will" incur if the injunctive relief Plaintiffs request were granted, does not exclude lost benefits from agreements Plaintiffs allege are unlawful, concludes the injunctive relief may be aggregated, and concludes that Defendants have satisfied their jurisdictional burden by showing that, more likely than not, the costs of complying with the requested injunction will exceed the jurisdictional threshold in the
 
 Galloway, Inc.
 
 and
 
 D’Esposito
 
 matters.,.
 

 There is a split in the federal courts concerning whose viewpoint-plaintiffs, defendant’s, or either one’s — the Court considers when placing a value on the requested injunction.
 
 See
 
 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
 
 Federal Practice and Procedure:
 
 Jurisdiction, § 3703 (West 3d ed.1998); 15 James Wm. Moore et al.,
 
 Moore’s Federal Practice
 
 § 102-109 (Matthew Bender 3d ed.). This Court finds the “either viewpoint” to be the better approach.
 
 See In re Brand Name Prescription Drugs,
 
 123 F.3d at 609-610.
 
 See also Crosby v. America Online, Inc.,
 
 967 F.Supp. 257, 264 (N.D.Ohio 1997);
 
 Hambell v. Alphagraphics Franchising, Inc.,
 
 779 F.Supp. 910, 912 (E.D.Mich.1991). This rule serves “the purpose of a jurisdictional amount in controversy requirement — to keep trivial cases away from the federal court system.” 14B Wright, Miller & Cooper,
 
 Federal
 
 
 *835
 

 Practice and Procedure:
 
 Jurisdiction, § 3703 at 124-25 (West 3d ed.1998). “Because the jurisdictional amount was enacted primarily to measure substantiality of the suit, the question of whether the controversy is substantial should not be answered unqualifiedly by looking only to the value of that which the plaintiff stands to gain or lose.” 15 James Wm. Moore et al,
 
 Moore’s Federal Practice
 
 § 102.109[4] at 102-200 (Matthew Bender 3d ed.). Under this “either viewpoint” approach, the Court considers the pecuniary result to either party and considers both “the value to the plaintiff of conducting his ... personal affairs free from the activity sought to be enjoined” and the costs of compliance the defendant will incur if the injunction is granted. 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
 
 Federal Practice and Procedure:
 
 Jurisdiction, § 3708 at 239 (West 3d ed.1998).
 

 Moreover, when considering the defendant’s costs of compliance, the Court is not required to ignore pecuniary benefits that derive from conduct the plaintiff alleges is unlawful. The Court is not persuaded by Plaintiffs’ arguments to the contrary, and. Plaintiffs’ reliance on dicta in
 
 In re Brand Name Prescription Drugs,
 
 123 F.3d at 610 is misplaced. At this stage of the litigation, the Court is attempting to value the amount “in controversy.” The legality of Defendants’ conduct is at issue in this case, and thus, the amount in controversy, what is being fought over, includes the value of the Hoechst/Andrx Agreement and other transactions that Plaintiffs’ allege are illegal. To adopt the approach Plaintiffs’ urge would force the Court to simply assume Defendants’ liability and ignore its potential costs of complying with the requested injunctive relief. Plaintiffs do not cite any decisions holding that this is an acceptable approach, and this Court finds its arguments unpersuasive.
 

 When applying the “either viewpoint” approach, the Court must be careful to ensure that there is no circumvention of the nonaggregation rule expressed in
 
 Zahn
 
 and
 
 Snyder.
 
 Thus, in a class action case, “the court must determine the nature of the right that would be protected by an injunction in order to set the appropriate value.”
 
 Shelly v. Southern Bell Tel. & Tel. Co., Inc.,
 
 873 F.Supp. 613, 616 (M.D.Ala. 1995) (citing
 
 Snow v. Ford Motor Co.,
 
 561 F.2d 787, 790 (9th Cir.1977)). Where the claims of the plaintiff and the class members are separate and distinct, the defendant “is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated.”
 
 In re Brand Name Prescription Drugs,
 
 123 F.3d at 610 (citing
 
 Snow v. Ford Motor Co.,
 
 561 F.2d 787, 790 (9th Cir.1977)). “[Ejach plaintiffs claim must be held separate from each other plaintiff’s claim from both the plaintiffs and the defendant’s standpoint.”
 
 Id.
 
 On the other hand, where the plaintiff and the class members have a common and undivided interest in the injunctive relief, it is appropriate to aggregate the total cost of the requested injunctive relief from the defendant’s viewpoint.
 
 See Earnest v. General Motors Corp.,
 
 923 F.Supp. 1469, 1472-73 (N.D.Ala.1996) (where the court observed that where the equitable relief sought “would benefit the putative class as a whole and not just any individual plaintiff’, then “each plaintiff has a common interest in the injunctive and declaratory relief”);
 
 Hoffman v. Vulcan Materials Co.,
 
 19 F.Supp.2d 475, 483 (M.D.N.C.1998) (where the court considered the defendant’s costs of complying with plaintiffs requested injunctive relief and observed that “because the defendant will sustain this loss even if only one plaintiff were to obtain the injunction, this is a case where plaintiffs have an undivided interest in the injunction”).
 

 Defendants have presented evidence that the cost of compliance with the requested injunction will exceed the amount in controversy threshold because it will lose the tens of millions of dollars it would otherwise receive under the Hoechst-Andrx Agreement and under the license it was granted in that same Agreement re
 
 *836
 
 garding the Hoechst patents. Defendants also argue that, because Plaintiffs and the class are seeking to enforce a single right in which they have a common and undivided interest, the entire value of its costs of compliance with the requested injunctive relief may be considered in determining the amount in controversy for jurisdictional purposes. This Court agrees. Plaintiffs seek injunctive relief that will benefit the class as a whole. Defendants’ costs of compliance do not depend upon the size of the class or the identity of its members. Accordingly, it is based upon a common and undivided interest and constitutes an integrated claim; its entire value may be considered when determining whether the amount-in-controversy requirement for diversity jurisdiction is satisfied, and that requirement is satisfied here.
 

 To summarize, this Court finds that Defendants have satisfied their burden of showing that this Court has diversity jurisdiction over the
 
 Galloway, Inc.
 
 and
 
 DEs-posito
 
 matters. This, however does not end the Court’s inquiry. Defendants also assert that this Court has federal question jurisdiction over two Florida state court actions,
 
 Pearl Lowy
 
 and
 
 Aetna U.S. Healthcare, Inc.
 
 In the two Florida actions, removal jurisdiction is not available, unless federal question jurisdiction exists, because Defendant Andrx and Plaintiffs are both Florida citizens, thus precluding removal under 28 U.S.C. § 1441(b).
 

 B. Federal Question Jurisdiction:
 
 Galloway, Inc., D’Esposito, Pearl Lowy,
 
 and
 
 Aetna U.S. Healthcare, Inc.
 

 Defendants contend that federal question jurisdiction exists under 28 U.S.C. § 1381 because: (1) the Hatch-Waxman Act completely preempts state laws that would render illegal conduct authorized or mandated under that Act; and (2) application of the “artful pleading” exception to the well-pleaded complaint rule is appropriate where resolution of Plaintiffs’ claims require resolution of substantial questions of federal law; i.e., interpretation of the Hatch-Waxman Act, a FTC Consent Order, patent law and the Noerr-Pennington Doctrine.
 

 The same federal question arguments Defendants advance here have been repeatedly rejected by all but one of the federal district courts that has considered them.
 
 Compare Aetna U.S. Healthcare, Inc. v. Hoechst, et
 
 al., Case No. 99-2034-KHV (D. Kan. June 9, 1999);
 
 Betnor, Inc. and Aetna/US Healthcare, Inc., et al. v. Hoechst, et al.,
 
 Consolidated Cases C-98-3609 MHP and C-98-4729 MHP (N.D. Cal. April 14, 1999);
 
 Sams v. Hoechst, et al.,
 
 Case No. 2:98-CV-348 (E.D. Tenn. April 7, 1999);
 
 Lightner, et al. v. Hoechst, et al.,
 
 Case No. 98-T-1057 (M.D.Ala. November 23, 1998) (Decisions rejecting Defendants’ federal question jurisdiction arguments) with
 
 Aetna/U.S. Healthcare, Inc. v. Hoechst, et al.,
 
 Case No. 99-124 DWF/ AJB (D. Minn. April 29, 1999) (sole decision accepting Defendants’ federal question jurisdiction arguments). This Court finds persuasive the analysis and result reached by the majority of the federal district courts and likewise rejects Defendants’ federal question jurisdiction arguments.
 

 1. Guiding Principles
 

 The inquiry whether federal question jurisdiction exists under 28 U.S.C. § 1331 “is guided by the well-pleaded complaint rule, which states that ‘federal jurisdiction exists only when a federal question is presented on the plaintiffs properly pleaded complaint.’ ”
 
 Strong v. Telectronics Pacing Systems, Inc.,
 
 78 F.3d 256, 259 (6th Cir.1996) (quoting
 
 Caterpillar Inc. v. Williams,
 
 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). “Since a defendant may remove a case only if the claim could have been brought in federal court, 28 U.S.C. § 1441(b), ..., the question for removal jurisdiction must also be determined by reference to the “well-pleaded complaint.’ ”
 
 Merrell Dow Pharmaceuticals, Inc. v. Thompson,
 
 478 U.S. 804, 808,
 
 *837
 
 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Moreover, because federal preemption is ordinarily a defense and does not appear on the face of a well-pleaded complaint, it “does not authorize removal to federal court.’ ”
 
 Strong,
 
 78 F.3d at 259 (quoting
 
 Metropolitan Life Ins. Co. v. Taylor,
 
 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). “ ‘Removal and preemption are two distinct concepts,’ and the fact that plaintiffs’ claim might ultimately prove to be preempted does not establish that it is removable to federal court.”
 
 Strong,
 
 78 F.3d at 261 (quoting
 
 Warner v. Ford Motor Co.,
 
 46 F.3d 531, 535 (6th Cir.1995)).
 

 There are two exceptions to the well-pleaded complaint rule: (1) the “complete preemption” doctrine permits removal when the state law the complaint is based upon has been totally preempted by federal law; and (2) the “artful pleading” doctrine permits removal when the plaintiff has “artfully” pled her complaint to avoid stating the federal claim the complaint is necessarily based upon. Defendants rely on both doctrines for removal.
 

 2. Complete Preemption
 

 Complete preemption is a recognized exception to the well-pleaded complaint rule. This doctrine “holds that when Congress intends the preemptive force of a statute to be so extraordinary that it completely preempts an area of state law, ‘any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.’”
 
 Strong,
 
 78 F.3d at 259 (quoting
 
 Caterpillar,
 
 482 U.S. at 393, 107 S.Ct. 2425). The Sixth Circuit has “reasoned that the congressional intent necessary to confer removal jurisdiction upon the federal district courts through complete preemption is expressed through the creation of a parallel federal cause of action that would ‘convert’ a state cause of action into the federal action for purposes of the well-pleaded complaint rule.”
 
 Strong,
 
 78 F.3d at 260.
 
 See also Schmel-ing v. NORDAM,
 
 97 F.3d 1336 (10th Cir. 1996);
 
 Rains v. Criterion Systems, Inc., 80
 
 F.3d 339 (9th Cir.1996).
 

 Defendants contend that Plaintiffs’ claims are wholly preempted by the Hatch-Waxman amendments to the Food, Drug and Cosmetics Act, 21 U.S.C. § 355(j) (“The Hatch-Waxman Act”). This Court disagrees. To successfully remove Plaintiffs’ state law claims under the complete preemption doctrine, Defendants must show that federal law creates a parallel federal cause of action that “converts” a state court action into a federal action.
 
 Strong,
 
 78 F.3d at 260. Defendants cannot meet this burden. The Hatch-Wax-man Act does not provide a private right of action,
 
 see
 
 21 U.S.C. § 355(j), thus there can be no removal jurisdiction under the complete preemption doctrine.
 
 Accord, Aetna U.S. Healthcare, Inc. v. Hoechst, et al.,
 
 54 F.Supp.2d at 1054-55;
 
 Betnor, Inc.,
 
 4/14/99 Mem. and Order at 4.
 

 3. Substantial Federal Question
 

 Defendants also contend that Plaintiffs’ claims, as pleaded, require resolution of substantial questions of federal law because they require interpretation of (1) the Hatch-Waxman Act; (2) an FTC Consent Order; and (3) patent law including application of the Noerr-Pennington doctrine. This Court disagrees. Defendants have not established that a substantial disputed question of federal law is a necessary element of one of the Plaintiffs’ well-pleaded claims.
 
 See Merrell Dow,
 
 478 U.S. at 810-817,106 S.Ct. 3229.
 

 In
 
 City of Chicago v. Intern'l College of Surgeons,
 
 522 U.S. 156, 164, 118 S.Ct. 523, 529, 139 L.Ed.2d 525 (1997), the Supreme Court observed that “ ‘[e]ven though state law creates Ta party’s] causes of action, its case might still ‘arise under’ the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law.’
 
 Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,
 
 
 *838
 
 468 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (case arises under federal law when ‘federal law creates the cause of action or ... the plaintiffs right to relief necessarily depends on resolution of a substantial question of federal law’);
 
 Gully v. First Nat. Bank in Meridian,
 
 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (federal question exists when a ‘right or immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiffs cause of action’).”
 

 a. Hatch-Waxman Act
 

 Defendants contend that Plaintiffs’ claims in essence allege that Defendants have violated the Hatch-Waxman Act, require the Court to interpret the Act, and thus raise substantial questions of federal law. Similar to the Kansas and California district courts who considered these arguments, this Court finds them unpersuasive. Plaintiffs here are not alleging that Defendants violated the Hatch-Waxman Act. “While plaintiffs allege that defendants abused their rights under the Act, plaintiffs’ claims also focus on defendants’ conduct outside of the Act-the stipulation agreement. To show [the alleged state violation], plaintiffs do not need to show that defendants violated the Act; plaintiffs need only show that defendants acted to restrict competition. While this showing might include proof that defendants violated the Act, that fact alone is insufficient to confer federal question jurisdiction, [citation omitted]. Plaintiffs can just as easily show that defendants fully complied with the Act, yet unfairly restricted competition with their conduct outside of the Act. Defendants cite no portion of the Act which addresses their stipulation agreement, and while consideration of the agreement will reference defendants’ rights under the Act, it will not require an interpretation or application of the Act. No substantial issue of federal law arises under the Hatch-Waxman Act.”
 
 Aetna U.S. Healthcare, Inc.,
 
 54 F.Supp.2d at 1055. The mere fact that state law claims may require consideration of the Hatch-Waxman Act does not raise a sufficiently significant federal issue so as to confer federal question jurisdiction.
 
 See Merrell Dow,
 
 478 U.S. at 813, 106 S.Ct. 3229 (where the Court observed that “the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction”).
 

 Likewise, the Court is not persuaded by Defendants’ arguments that the need for uniform interpretation of the Act creates a substantial federal question. The Supreme Court considered and rejected a similar argument in
 
 Merrell Dow,
 
 478 U.S. at 815-16, 106 S.Ct. 3229. This Court agrees with the observations of the United States District Court for the Northern District of California in the consolidated
 
 Betnor
 
 action. “The
 
 Merrell Dow
 
 court found that petitioner’s argument regarding uniformity of interpretation was actually an argument in favor of preemption, not an argument which supports the conclusion of federal question jurisdiction..
 
 See id.
 
 In addition, the court noted that the concern about uniformity of interpretation is considerably mitigated by the fact that even in the absence of original federal jurisdiction, the Supreme Court still retains power to review the decision of a federal issue in a state cause of action.
 
 See id.
 
 Accordingly, defendants’ arguments in favor of federal jurisdiction on this grounds [sic] is merit-less.” Bet
 
 nor,
 
 4/19/99 Mem. and Order at 6.
 

 b. The FTC Order
 

 The
 
 D’Esposito, Lowy,
 
 and
 
 Aetna U.S. Healthcare, Inc.
 
 complaints allege, in support of their state law claims, that Defendant Hoechst violated an FTC Consent Order and that Defendant Hoechst also renounced a commitment it made in a December 18, 1995 letter to the FDA. Defendants argue here that Plaintiffs’ entitlement to relief for any violation of the FTC Consent Order, even if brought on state law grounds, necessarily depends on this Court’s construction and application of
 
 *839
 
 that federal consent order. This same argument was recently rejected by the district courts in
 
 Aetna U.S. Healthcare, Inc. v. Hoechst, et al.,
 
 54 F.Supp.2d at 1054 and in
 
 Betnor,
 
 4/14/99 Mem. and Order at 6-7. This Court agrees with the analysis and result reached by the
 
 Aetna
 
 and
 
 Betnor
 
 courts. Plaintiffs’ substantive claim is one that arises under state law; not federal law. “The allegations regarding the PTC order merely evidence plaintiffs’ state law claims. As plaintiffs note, if [Hoechst] did not violate the FTC order, it could still violate state law. In a companion case, [th]e Northern District of California has likewise found that allegations of unfair competition under state law seek to litigate [Hoeehst]’s conduct, not the FTC order.”
 
 Aetna,
 
 54 F.Supp.2d at 1054 (citing
 
 Bet-nor, Inc.,
 
 Mem. and Order at 6-7). Plaintiffs’ claims do not require interpretation of the FTC order. Moreover, as the
 
 Bet-nor
 
 court observed, the cases Defendants rely upon fail to support their position.
 
 See Sable v. General Motors Corp.,
 
 90 F.3d 171 (6th Cir.1996);
 
 Eyak Native Village v. Exxon Corp.,
 
 25 F.3d 773, 777-79 (9th Cir.1994),
 
 cert. denied,
 
 513 U.S. 943, 115 S.Ct. 351, 130 L.Ed.2d 307 (1994);
 
 Dennison v. City of Los Angeles Dep’t of Water and Power,
 
 658 F.2d 694 (9th Cir.1981). Unlike the circumstances presented here, in each of the cited cases, “the plaintiffs’ claim was a disguised
 
 attack
 
 on the propriety of a specific finding made by a federal court.... Here, plaintiffs do not seek to overturn the PTC Consent Order, nor do they challenge the appropriateness of the judgment. Rather, plaintiffs attack [Hoechstj’s
 
 condMct
 
 in carrying out the duties provided for in the consent decree.”
 
 Betnor,
 
 4/14/99 Mem. and Order at 6.
 

 c. Patent Law
 

 “Plaintiffs allege that [Hoechst] filed frivolous patent infringement actions for the sole purpose of delaying and preventing entry of competing products into the marketplace.”
 
 Aetna,
 
 54 F.Supp.2d at 1052. Despite Defendant Hoechst’s claim that Plaintiffs’ complaints raise substantial questions regarding federal patent law, Plaintiffs do not question the validity of Hoechst’s patents. Rather, as the Kansas District Court observed, “they allege that [Hoechst] violated [state] law by instigating patent litigation for the sole purpose of delaying and preventing competition.”
 
 Aetna,
 
 54 F.Supp.2d at 1053. Accordingly, “Plaintiffs’ right to relief does not necessarily depend! ] on resolution of a substantial question of federal law, and federal law is not a necessary element of one of the well-pleaded ... claims.”
 
 Id.
 
 (internal quotes and citations omitted). “Plaintiffs’ claims do not depend on whether the [Hoechst] patents are valid; they allege only that [Hoechst] had an impure heart when it filed suit. Moreover, regardless whether the [Hoechst] patent is valid, plaintiffs allege that defendants committed other acts” that would violate state law— “such as the stipulation agreement. Any discussion of patent law is merely tangential to plaintiffs’ claim that [Hoechst] had an ill motive which resulted in [state law violations]. While federal law may be implicated in an examination of [Hoechstj’s motives, it is hardly a substantial or necessary part of plaintiffs’ claim.”
 
 Id.
 
 at 1053-54.
 

 d. Noerr-Pennington Doctrine
 

 Defendants also argue that resolution of Plaintiffs’ claims necessarily depend upon construction, interpretation and application of federal law under the Noerr-Penning-ton doctrine because “the doctrine requires that Plaintiffs: (1) establish that defendants’ submissions to the FDA were not immune from anti-trust liability; and (2) plead and prove that the underlying patent litigation is a sham.”
 
 Betnor,
 
 4/14/99 Mem. and Order at 7 (citing
 
 United Mine Workers v. Pennington,
 
 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965);
 
 Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,
 
 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961)). “ The Noerr-Pennington doctrine is based upon the protections of the First Amendment
 
 *840
 
 and exempts from antitrust liability any legitimate use of the political process by private individuals, even if their intent is to eliminate competition.’ ”
 
 Aetna,
 
 54 F.Supp.2d at 1052 (quoting
 
 Zimomra v. Alamo Rent-A-Car, Inc.,
 
 111 F.3d 1495, 1503 (10th Cir.1997)). There is, however, a “sham” exception to the Noerr-Pennington doctrine which does not allow immunity protection to “sham” actions.
 

 Plaintiffs here, similar to the Plaintiffs in the
 
 Aetna
 
 and
 
 Betnor
 
 cases, argue that the Noerr-Pennington doctrine is a defense and thus cannot be used to establish federal question jurisdiction under the well-pleaded complaint rule. Defendants, on the other hand, argue that the “doctrine is not really an affirmative defense because plaintiffs bear the burden of proving that defendants’ conduct falls within an exception to the doctrine.”
 
 Aetna,
 
 54 F.Supp.2d at 1053. This Court agrees with the
 
 Aetna
 
 and
 
 Betnor
 
 Courts and likewise finds that, because “the Noerr-Pennington doctrine constitutes a defense, it cannot form the basis for federal question jurisdiction in this case.”
 
 Aetna,
 
 54 F.Supp.2d at 1053.
 
 See also Betnor,
 
 4/14/99 Mem. and Order at 7-8. As the
 
 Aetna
 
 Court observed, “[wjhile a defendant can attack plaintiffs’ complaint for failing to allege an exception to the doctrine, [citation omitted], such an exception is not a necessary element of plaintiffs’ claim. Rather, it is a response to an anticipated defense. The doctrine is a defense which, once asserted by defendants, plaintiffs must defeat.”
 
 Aetna,
 
 54 F.Supp.2d at 1053 (quotations and cites omitted).
 

 e. Summary
 

 In light of the above,- this Court finds that federal question jurisdiction does not exist under 28 U.S.C. § 1331. Accordingly, the
 
 Lowy
 

 [7]
 

 and
 
 Aetna U.S. Healthcare,
 
 Inc.
 
 [8]
 
 cases were improperly removed and Plaintiffs’ motions for remand are GRANTED. III. Conclusion
 

 For the foregoing reasons, Plaintiffs’ motions for remand are DENIED is
 
 Gabriel, Sunshine Pharmacy, Eirich, Glover, Sizemore, Galloway, Inc.,
 
 and
 
 D’Esposito,
 
 and GRANTED in
 
 Lowy
 
 and
 
 Aetna U.S. Healthcare, Inc.'
 

 [1]
 

 . The only remaining remand issue pending before the Court involves
 
 Lightner et al. v. Hoechst Aktiengesellschaft, et al.,
 
 Middle District of Alabama Case No. CV-99-A-784-N. The remand in the
 
 Lightner
 
 case is not being considered at this time because the Court has not yet received the record from the transfer- or court, has not yet assigned the matter a case number, and Defendants have not yet had an opportunity to respond to the pending motion.
 

 [2]
 

 . If the Defendant shows that the relevant state law does not limit the plaintiffs damages to the amount pled, removal may still be an option. As observed by one commentator, "[i]f plaintiff’s cause of action and the relief actually sought clearly involve a controversy in excess of the required amount, removal is not defeated by a monetary prayer for less than the amount.” 15
 
 Moore’s Federal Practice,
 
 § 102.107[3] at 102.186.1 (Matthew Bender 3d ed). "If the state court complaint alleges damages less than the jurisdictional amount, but state law does not limit the plaintiff to the amount pleaded, there is the specter of bad-faith pleading to avoid removal.”
 
 Id.
 

 The Court is aware of the split in the circuits as to the burden of proof a defendant must satisfy when a plaintiff pleads for less than the jurisdictional amount, but declines to follow the approach adopted by either the
 
 *824
 
 Eleventh or Fifth Circuits and instead follows the approach discussed in
 
 Gafford.
 
 The Eleventh Circuit has held that a plaintiffs allegations as to the jurisdictional amount are entitled to deference and a presumption of truth and therefore, to avoid a remand, the defendant must prove "to a legal certainty” that the plaintiff's claim must exceed the jurisdictional minimum.
 
 Burns v. Windsor Ins. Co.,
 
 31 F.3d 1092 (11th Cir.1994).
 

 The Fifth Circuit applies a different burden of proof standard. In
 
 De Aguilar v. Boeing Co.,
 
 47 F.3d 1404 (5th Cir. 1995), which involved the crash of a Mexican airliner, the plaintiffs' attorneys filed a state court complaint alleging that the amount in controversy was less than the jurisdictional minimum for diversity jurisdiction and attached an affidavit which stated that the plaintiffs had agreed on an irrevocable cap on the amount of damages. The Fifth Circuit, observing that Texas law does not limit a plaintiff's damages to the amount set forth in the complaint, determined that it was necessary to address the fact that these "rules have created the potential for abusive manipulation by plaintiffs, who may plead for damages well below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to avoid federal jurisdiction by virtue of the pleading.”
 
 Id.
 
 at 1410. To protect against such manipulation by plaintiffs, the Court set forth the following shifting burden of proof rule: "if a defendant can show that the amount in controversy actually exceeds the jurisdictional amount, the plaintiff must be able to show that, as a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint.”
 
 Id.
 
 at 1411. The defendant satisfies its initial burden under a preponderance standard. The burden then shifts to the plaintiff and becomes a "legal certainty” obligation; i.e., plaintiff can satisfy the burden by showing that state law prohibits recovery of a greater amount than that in the complaint, or, if there is no such law, plaintiffs can file "a binding stipulation or affidavit with their complaints.”
 
 Id.
 
 at 1412.
 

 [3]
 

 . The same language is found in the
 
 Gabriel
 
 Complaint V 106.
 

 [4]
 

 . The Court is mindful of Plaintiff's attempt to distance himself from these statements at the hearing on this matter. Despite that attempt, the Court finds that the
 
 Sizemore
 
 complaint does make allegations of unjust enrichment and does include “disgorgement” when discussing the items of recovery sought therein.
 

 [5]
 

 . This result and analysis has been rejected by the Second and Seventh Circuits.
 
 See Gilman v. BHC Securities, Inc.,
 
 104 F.3d 1418, 1428-31 (2d Cir.1997) (where the Court observed that punitive damages may not be aggregated unless the plaintiffs underlying claims can be aggregated);
 
 In re Brand Name Prescription Drugs Antitrust Litigation,
 
 123 F.3d 599, 608-09 (7th Cir.1997) (where the Court observed that "[a] plaintiff's award of punitive damages is not limited by awards made to previous plaintiffs complaining of the same act of the defendant.... [W]hether it is a good rule or a bad rule it shows that the right to punitive damages is a right of the individual plaintiff, rather than a collective entitlement of the victims of the defendant’s misconduct”).
 

 [6]
 

 . Although Defendant Hoechst joins Defendant Andrx’s arguments regarding diversity jurisdiction, it does not state what costs it will incur if required to comply with the injunctive relief Plaintiffs seek.
 

 [7]
 

 . Defendant Andrx also argues, in connection with the
 
 Lowy
 
 action, that diversity jurisdiction exists despite the fact that both it and Plaintiffs are citizens of Florida. Defendant bases its argument on the fact that Defendant Hoechst is a foreign entity and thus there is only a need for minimal diversity and not complete diversity under 28 U.S.C. § 1332(a)(3). This Court finds Defendant’s argument unpersuasive.
 

 Defendant’s argument ignores the first part of § 1332(a)(3) which requires that parties be citizens of different states and that the foreign citizen be an "additional party.” This point is illustrated In
 
 Transure, Inc. v. Marsh and McLennan, Inc.,
 
 766 F.2d 1297 (9th Cir. 1985). There, the Court observed that the "presence of an alien corporation on one side
 
 as an additional party
 
 does not
 
 defeat
 
 diversity jurisdiction.”
 
 Id.
 
 at 1298 (emphasis added). Therefore, the Court reasoned, "the presence of alien corporations on both sides of the controversy did not defeat diversity jurisdiction.”
 
 Id.
 
 at 1299. In other words, absent the alien parties, diversity jurisdiction existed. Construing the language of § 1332(a)(3), the Court determined that the
 
 addition
 
 of alien corporations on both sides would not defeat the diversity jurisdiction that already existed. Defendant’s reliance on
 
 Dresser Indus., Inc. v. Underwriters at Lloyd's of London,
 
 106 F.3d 494 (3d Cir.1997) is misplaced.
 
 Dresser
 
 refutes rather than supports Defendant's position. In
 
 Dresser,
 
 the Court held that "[t]he language of section 1332(a)(3) grants federal jurisdiction when aliens are additional parties. The statute makes no distinction based upon which side of the controversy-plaintiff, defendant, or both-the aliens appear. Although the statute plainly requires that the dispute be between citizens of different states, it includes the phrase ‘additional parties’ without any such limitation.”
 
 Id.
 
 at 497.
 

 [8]
 

 .- In light of this Court's decision that jurisdiction is lacking, there is no need to address the collateral estoppel argument that Plaintiff raises in connection with this case.