Dale **DURANT** and Deborah Durant, individually and in a representative capacity, Plaintiffs,

v.

**SERVICEMASTER CO. TRUGREEN, INC., and Trugreen Ltd. P'ship, Defendants.**

**No. CIV 01–40007.**

United States District Court, E.D. Michigan, Southern Division.

May 11, 2001.

Gregory D. Hanley, Hanley Timothy O. McMahon, Stephen Wasinger, Wasinger, Kickham, Royal Oak, MI, for plaintiff.

S. Thomas Wienner, Feeney, Kellett, Bloomfield Hills, MI, Robert B. Ellis, Kirkland & Ellis, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before the Court is Plaintiffs' motion to remand [docket entry 2]. After a hearing in open court and consideration of the parties' submissions, the Court denies Plaintiffs' motion to remand.

## I BACKGROUND

Plaintiffs filed their complaint in the Circuit Court for the County of Wayne on December 26, 2000. Plaintiffs allege that Defendants are corporations that collaborate with one another to provide lawn care services to roughly 3.5 million customers. Plaintiffs allege that Defendants wrongly added a "fuel surcharge" of one dollar to customers' bills. Plaintiffs are Michigan citizens and customers of Defendants. They seek certification as a class and assert the following claims against Defendants: (1) breach of contract; (2) violation of the Michigan Consumer Protection Act; and (3) unjust enrichment. Plaintiffs pray that the Court impose the following remedies:

(1) an injunction against Defendants "from charging a Surcharge or similar charge";

(2) judgment against Defendants "for all amounts of compensatory and punitive damages [to which] Plaintiffs and the Class may be entitled";

(3) an order directing Defendants to "disgorge all profits which they have unjustly obtained as a result of the Fraudulent Scheme and the collection of the Surcharge";

(4) an order directing Defendants "to pay into a common fund for the benefit of Plaintiffs and all other members of the Class the total amount of compensatory and punitive damages to which Plaintiffs and the Class are entitled as well as the monies which [Defendants have] been required to disgorge";

(5) appointment "of a Trustee to seize, manage and distribute in an orderly manner the common fund thus established";

(6) the awarding to "Plaintiffs the costs and expenses incurred in this action, including reasonable attorneys', accountants', and experts' fees"; and

(7) the granting of "any other appropriate relief." Plaintiffs seek damages in excess of $25,000, which is the state jurisdictional amount.

Defendants filed a notice of removal on January 12, 2001, asserting that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and because the amount in controversy exceeds $75,000. On February 6, 2001, Plaintiffs filed a motion to remand this case to state court. Although Plaintiffs do not dispute that complete diversity exists in this case (Pl. Br. at 5), they argue that the Court lacks diversity jurisdiction, and must therefore remand this case, because the amount in controversy is below $75,000.

## II LEGAL STANDARD

In general, a defendant may remove a civil action from state court to federal court only when the federal court would have original jurisdiction over the civil action. 28 U.S.C. § 1441(a). For this Court to have original jurisdiction over a civil action based on diversity of citizenship, the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). A defendant seeking to remove a case to federal court bears the burden of establishing jurisdiction. *See Coyne v. American Tobacco Co.,*

183 F.3d 488, 493 (6th Cir.1999); *Her Majesty The Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989). The notice of removal "is to be strictly construed, with all doubts resolved against removal." *Id.*

In "cases removed to a federal court from state court where the plaintiff's prayer for damages in the state suit exceeds the federal amount-in-controversy requirement," *Gafford v. General Elec. Co.*, 997 F.2d 150, 157 (6th Cir.1993), the district court may remand only "if, from the face of the pleadings, it is apparent, *to a legal certainty*, that the plaintiff never was entitled to recover that amount ...." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (emphasis added). In cases removed to a federal court "where the plaintiff seeks to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement," the defendant who removes the case has the burden of proving by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional amount. *See Gafford*, 997 F.2d at 158. The mere assertions of the parties will not defeat a motion to remand for failure to satisfy the jurisdictional amount. In this case, because Plaintiffs have pled that they seek to recover an unspecified amount in excess of $25,000, the preponderance-of-the-evidence standard applies to Defendants. *See Chamberlain v. American Tobacco Co.*, 70 F.Supp.2d 788, 801 (N.D.Ohio 1999).

A defendant seeking to remove a case to federal court based on diversity of citizenship must establish that each plaintiff satisfies the minimum amount in controversy of the diversity statute. " 'When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount ....' " *Zahn v. International Paper Co.*, 414 U.S. 291, 294, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (quoting *Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911)); *see also Casteel v. Sara Lee Corp.*, 51 F.Supp.2d 816, 822 (E.D.Mich.1999) (Gadola, J.) (concluding that 28 U.S.C. § 1367 does not overrule *Zahn*). Multiple plaintiffs, moreover, usually may not aggregate their claims against a single defendant to meet the minimum amount in controversy. *Zahn*, 414 U.S. at 295, 94 S.Ct. 505. The Court must also dismiss "those litigants whose claims do not satisfy the jurisdictional amount, even though other litigants assert claims sufficient to invoke the jurisdiction of the federal court." *Id.*

## III ANALYSIS

### A. Jurisdictional Amount

Defendants first argue that more than $75,000 is in controversy because Plaintiffs seek an order requiring Defendants to disgorge "all profits which [Defendants] have unjustly obtained" from the surcharge (Complaint at 10), and Plaintiffs themselves admit that the amounts "collectively extracted by Defendants through their imposition of the surcharge likely exceed hundreds of thousands of dollars."[1] (Pl. Br. at 1.) Plaintiffs

---

1. Compensatory damages are inherently separate and distinct because they correspond to each Plaintiff's unique injuries. As such, compensatory damages may not be aggregated to meet the jurisdictional amount. *See Darden v. Ford Consumer Finance Co.*, 200 F.3d 753, 758–59 (11th Cir.2000); *Peterson v. BASF Corp.*, 12 F.Supp.2d 964, 973 (D.Minn. 1998); *Greer v. Mobil Oil Corp.*, No. 97–341, 1997 WL 180477, at *1 (E.D.La. Apr.14, 1997) (Clement, J.) (citing *Zahn*, 414 U.S. at 291, 94 S.Ct. 505).

assert, however, that "the damages for each individual plaintiff would not justify the costs of litigating" this action, and that the Court may not consider damages in the aggregate. (Pl. Br. at 1.) Therefore, in Plaintiffs' view, the jurisdictional amount is lacking.

 The salient question thus becomes: should the Court consider in the aggregate the surcharge monies that Plaintiffs seek to compel Defendants to disgorge? Although the Court may not aggregate separate and distinct claims, aggregation is valid when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Sellers v. O'Connell,* 701 F.2d 575, 579 (6th Cir.1983) (quotation omitted). An identifying trait of a common and undivided interest is that if one plaintiff were to fail to collect his share, the remaining plaintiffs would collect a larger share. *Id.* Where the results obtained by fellow plaintiffs would not affect a plaintiff's individual cash claims, however, aggregation is not appropriate. *Id.* The critical factor is the nature of the right that the plaintiffs assert, and not whether vindication of that right would "lead to a single pool of money that would be allocated among the plaintiffs." *Krieger v. Gast,* 197 F.R.D. 310, 316 (W.D.Mich. 2000) (quotation omitted).

*In addition to their claim for damages,* Plaintiffs seek a common fund into which Defendants would have to disgorge every penny that they allegedly received through unjust enrichment. (Complaint at 10.) Plaintiffs insist that this fund would merely be a mechanism through which individual Plaintiffs would be awarded individually-tailored remedies. It seems from the face of the complaint, however, that, unless all Plaintiffs join in the action, once all class Plaintiffs have recovered compensatory

damages, there would still be monies left in the unjust-enrichment fund.

 This is so because a theory of unjust enrichment, if successfully asserted, would require Defendants to disgorge all benefits to which they are not entitled. *Overstreet v. Kentucky Central Life Ins. Co.,* 950 F.2d 931, 944 (4th Cir.1991). Thus, if Defendants did engage in a fraudulent scheme and wrongly benefitted by obtaining, say, $1,000,000, a theory of unjust enrichment would require Defendants to place all of that $1,000,000 in the disgorgement fund. Compensatory damages, conversely, are limited to the extent of Plaintiffs' actual losses. *Kinser v. Ford Motor Credit Co.,* 470 F.Supp. 86, 87 (E.D.Tenn.1979). Therefore, if Defendants are found liable and the Plaintiffs who ultimately join the putative class suffered, for example, only $400,000 in actual losses, Defendants would only pay $400,000 in compensatory damages. The other $600,000 that Defendants would have wrongly obtained nonetheless would go into the fund for disgorgement. *See* Comment e, Restatement (First) of Restitution § 1 (1936) (discussing what happens when the defendant's unjust benefit and the plaintiff's loss do not coincide).

Given the complaint's silence regarding whether any monies in the disgorgement fund would be paid in an individualized manner, it appears from the face of the complaint that, at that point, Plaintiffs would recover per capita from the disgorgement fund regardless of any actual, individualized losses that each may have suffered. (Complaint at 10.) *See In re Microsoft Corp. Antitrust Litig.,* 127 F.Supp.2d 702, 720–21 (D.Md.2001). Under the rule of *Sellers,* therefore, Plaintiffs are seeking a common and undivided interest in the form of the common fund, and aggregation of the amount of disgorgement is in order. *See In re Cardizem CD*

*Antitrust Litig.*, 90 F.Supp.2d 819, 828–29 (E.D.Mich.1999) (Edmunds, J.). *But cf. Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir.2000).

Plaintiffs disagree, citing a string of persuasive authority for the proposition that Judge Edmunds, in *Cardizem*, incorrectly held that a complaint seeking disgorgement could justify aggregation. (Pl. Br. at 11.) The chief cases upon which Plaintiffs rely, however, do not appear to be inconsistent with *Cardizem*.

In *Campbell v. General Motors Corp.*, 19 F.Supp.2d 1260 (N.D.Ala.1998), the district court reasoned that *"[a]bsent unusual circumstances,* unjust enrichment claims do not provide a generalized recovery of a fixed fund for the class. Instead, each plaintiff is entitled to the defendants' profits which resulted from the wrongdoing to that particular plaintiff. While the damages are admittedly based on the defendants' profits, and not the plaintiffs' harm, each recovery is an individual right and constitutes an individual interest." *Id.* at 1268 (emphasis added). *Cardizem* was similar to the case at bar, however, in that there were unusual circumstances under which the plaintiffs' success on the unjust enrichment claim would have provided a generalized recovery of a fixed fund for the class. *Cardizem*, 90 F.Supp.2d at 828. *Campbell* is thus distinguished from *Cardizem* on its facts.

In *Gilman v. BHC Secs., Inc.*, 104 F.3d 1418 (2d Cir.1997), the plaintiffs sought disgorgement as a means of obtaining money damages specific to each plaintiff. *See id.* at 1426–28. In *Cardizem*, however, the recovery that each plaintiff would have received from the common fund for disgorgement was not plaintiff-specific, and would have risen or fallen depending upon the number of plaintiffs in the class. *Cardizem*, 90 F.Supp.2d at 828. *Gilman*,

therefore, is factually distinguished from *Cardizem* and from this case.

In *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F.Supp.2d 1042 (D.Kan.1999), each plaintiff could only recover to the extent of his particular harm, *see id.* at 1050–51, which, again, was not the case in *Cardizem* nor is it the case here.

 It is true that, generally, putative class members' claims for unjust enrichment do not put forth a common and undivided interest and thus may not be aggregated to meet the jurisdictional requirement. *Kline v. Avis Rent A Car Sys., Inc.*, 66 F.Supp.2d 1237, 1241 (S.D.Ala.1999). But in the unusual cases in which a putative class of plaintiffs "have claimed disgorgement *in addition to their claims for damages,* and they have not disavowed their entitlement to that remedy under the substantive state laws giving rise to their causes of action," a claim for unjust enrichment is aggregated and removed properly. *In re Microsoft Corp. Antitrust Litig.*, 127 F.Supp.2d at 720–21 (emphasis added). This is such an atypical case, and the Court therefore concludes that aggregation is appropriate here.

The Court apprehends no authority directly contrary to the proposition that, where, as here, plaintiffs seek to recover per capita from a common fund into which the defendant disgorges monies, the Court should aggregate the value of the monies sought to be paid into that fund. The Court therefore concludes that, because Plaintiffs seek to recover per capita from a common fund into which the Defendants would disgorge ill-gotten gains, and one Plaintiff's failure to collect his share would result in a larger share for each remaining Plaintiff, Plaintiffs seek to enforce a right to a common and undivided interest. Aggregation thus is required of the amount

Plaintiffs seek to recover under the theory of unjust enrichment. For that reason, this Court holds that the jurisdictional amount is satisfied, and this Court has diversity jurisdiction over this case.

■ An alternate reason that the Court concludes that the jurisdictional amount is satisfied is that Plaintiffs' claim for punitive damages must be aggregated. The Sixth Circuit has yet to rule on whether punitive damage claims can be aggregated, and persuasive authorities differ widely. *See* Ashley H. Degaris, *Class Actions Gilman v. BHC Securities, Inc.: The Aggregation of Punitive Damages in Class Actions to Satisfy Amount in Controversy Requirements for Diversity Jurisdiction,* 21 Am. J. Trial Advoc. 401, 401–05 (1997).

One approach[2] to this issue was enunciated by Judge Katz in *Knauer v. Ohio State Life Ins. Co.,* 102 F.Supp.2d 443 (N.D.Ohio 2000). In that case, the district court reasoned that "the Court must look to the complaint itself to see if the punitive damages claimed are collective or individual in nature." *Id.* at 449. Because the *Knauer* plaintiffs sought an order "[a]warding Plaintiffs and the Class punitive damages in an amount to be determined at trial," the district court concluded that the complaint stated a claim that was collective in nature. *See id.* This was so because Judge Katz noted that if one plaintiff failed to collect his share of puni-

tive damages, the "shares of the remaining plaintiffs [would] be increased." *Id.*

Here, much as in *Knauer,* Plaintiffs seek punitive damages in an unspecified amount. (Complaint at 10.) Specifically, Plaintiffs seek "all amounts of . . . punitive damages [to which] Plaintiffs and the Class may be entitled." (Complaint at 10.) Were the Court to follow *Knauer,* therefore, it would aggregate punitive damages in this case.

The Court will follow *Knauer* because the reasoning underlying that case is analogous to the Sixth Circuit's approach to aggregation vis-a-vis disgorgement in *Sellers.* The salient point in both instances is not whether plaintiffs use the term "punitive damages" or "unjust enrichment" in their complaint, but whether the remedy they seek is collective or individual. For reasons discussed above, Plaintiffs seek a common and undivided interest in punitive damages. The Court will therefore aggregate punitive damages. Aggregating punitive damages, the Court concludes that the jurisdictional amount is satisfied because Plaintiffs, as they explained in the hearing, theorize that Defendants defrauded millions of potential class members. Assuming *arguendo* that Plaintiffs prevail on that theory, punitive damages would likely exceed $75,000. *See Robinson v. Computer*

---

**2.** A second group of courts holds that punitive damages exist to punish the tortfeasor and not to compensate the victim. Accordingly, these courts reason, punitive damages only are nominally individual awards. *See, e.g., Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1332 (5th Cir.1995). The Court rejects this position because it seems incongruous with the Sixth Circuit's reasoning regarding disgorgement funds. The Sixth Circuit has held, as discussed above, that where one plaintiff's failure to collect his share increases the size of other plaintiffs' shares, there is a common and undivided interest and, hence, aggrega-

tion is appropriate. By such a standard, depending upon the wording of the complaint, it would seem that a fund of punitive damages may, or may not, be a common and undivided interest.

A third approach is to reason that, because each class member has a separate interest in a portion of the total punitive damages, courts must apportion punitive damage awards among class members. *See Gilman,* 104 F.3d at 1428–31. The Court rejects this position because, as discussed above, there are times when a punitive damages award would be a common and undivided interest.

*Learning Centers, Inc.*, No. 99–3904, 1999 WL 817745, at *2 (E.D.Pa. Oct.12, 1999).

**B. Section 1292 Certification**

 Pursuant to 28 U.S.C. § 1292(b), the Court certifies the following issues for interlocutory appeal: (1) whether the Court committed an error of law in concluding that damages for unjust enrichment should be aggregated regarding the amount in controversy requirement; and (2) whether the Court committed an error of law in concluding that punitive damages should be aggregated regarding the amount in controversy requirement.

The Court makes this certification because these issues each "involve[ ] a controlling question of law as to which there is substantial ground for difference of opinion ... and an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Mercer v. Jaffe, Snider, Raitt and Heuer, P.C.*, 713 F.Supp. 1019, 1027 (W.D.Mich.1989). The Court realizes that § 1292(b) exists only for exceptional situations in which an immediate appeal may prevent protracted litigation and concludes that this is such a case.

**IV CONCLUSION**

For reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to remand [docket entry 2] is **DENIED.**

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1292(b), the Court certifies the following issues for interlocutory appeal: (1) whether the Court committed an error of law in concluding that damages for unjust enrichment should be aggregated regarding the amount in controversy requirement; and (2) whether the Court committed an error of law in concluding that punitive damages should be

aggregated regarding the amount in controversy requirement.

**SO ORDERED.**