Patrick J. PEROTTI, individually and
on behalf of all others similarly
situated, Plaintiff

v.

BLACK & DECKER (U.S.)
INC., Defendant

No. 1:01 CV 2120.

United States District Court,
N.D. Ohio,
Eastern Division.

June 4, 2002.

Brian G. Ruschel, Cleveland, OH, for Plaintiff.

Douglas D. Guidorizzi, John Parker Sweeney, Joseph W. Hovermill, Miles & Stockbridge, Baltimore, MD, Gabrielle S. Moses, Timothy J. Coughlin, Thompson Hine, Cleveland, OH, for Defendant.

### MEMORANDUM OF OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

WELLS, District Judge.

Before the Court is plaintiff's motion to remand. (Docket # 9). An opposition and a reply have been filed. (Docket # 11, 12).

For the reasons that follow, the motion to remand is granted.

### BACKGROUND

Plaintiff Patrick J. Perotti ("Perotti") filed this putative nationwide class action in the Cuyahoga County Court of Common Pleas. This case was removed by Defendant Black & Decker (U.S.) Inc. ("Black & Decker") to federal district court on 5 September 2001 on the basis of diversity of citizenship. (Docket # 1).

Perotti alleges that the packaging of Black & Decker's single-speed Jigsaw Model No. 7552 ("Jigsaw") depicts on its front the Jigsaw using a jigsaw blade to cut a piece of wood, but the blade is not included in the box. He claims that Black & Decker breached its obligation to provide the Jigsaw's purchasers with a complete product, was deceptive and misrepresentative, and violated state consumer protection laws. (Compl.¶¶ 16, 19, 23). In

his complaint, Perotti seeks the following relief on his behalf and on behalf of the putative class of Jigsaw purchasers: (1) recission, with a refund of the purchase price, or damages in the amount of the cost of a blade for the Jigsaw; (2) "additional compensatory damages ... exceeding $25,000"; (3) "punitive damages in an amount exceeding $25,000"; (4) attorney's fees; (5) accountants' and auditors' fees; (6) "an injunction against Defendant requiring it to cease and desist marketing the above product with a depiction of a blade on the front color photograph ... or for an injunction requiring Black & Decker to include a blade with the product." (Compl. at 4). However, the complaint expressly states, "Plaintiffs assert however that in demanding relief, Plaintiffs intend and do hereby limit themselves to the *total* amount of Seventy Thousand Dollars ($70,000.00), per class member, for all requested relief, including but not limited to damages, attorneys fees, costs, expenses, and otherwise." (Compl. at 5).

## LAW & ANALYSIS

### General Law

"Generally, a civil case brought in state court may be removed by a defendant to federal court if it could have been brought there originally." *Gafford v. General Elec. Co.*, 997 F.2d 150, 155 (6th Cir.1993). For a federal district court to have original jurisdiction over a civil action based on diversity of citizenship, the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The burden of establishing federal jurisdiction rests "clearly upon the defendant[ ] as the removing party." *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir.1994). This court must "look to the complaint as it existed at the time the petition for removal was filed to determine the matter of federal jurisdiction raised by the defendant's notice of removal." *Id.* The federal courts strictly construe removal petitions in a manner that resolves all doubts against removal. *Her Majesty The Queen v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989).

Generally, for removal of a class action to be appropriate under the diversity jurisdiction statute, a defendant must show that the jurisdictional amount in controversy is satisfied by each class member. *Snyder v. Harris*, 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *see also, Zahn v. International Paper Co.*, 414 U.S. 291, 294, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). "[S]eparate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder*, 394 U.S. at 335, 89 S.Ct. 1053. Aggregation only is permitted "in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id.* Any plaintiff who does not satisfy the amount in controversy must be dismissed. *Zahn*, 414 U.S. at 301, 94 S.Ct. 505.

The Sixth Circuit has explained that "[a]n identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased." *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir.1983). Thus, "[w]here a group of plaintiffs litigate individual cash claims the amount of which remain unaffected by the results obtained by fellow plaintiffs," the claims of the litigants may not be aggregated when considering whether the amount in controversy requirement is met. *Id.*

For the purpose of assessing whether federal jurisdiction exists, the Court will assume that a class will be certified. *See Knauer v. Ohio State Life Ins. Co.*, 102 F.Supp.2d 443, 446 (N.D.Ohio 2000).

### Plaintiffs' Limitation on Relief

Perotti argues that the complaint's express limit of $70,000 on the total relief sought by plaintiffs bars removal because the $75,000 amount in controversy requirement cannot be met by each plaintiff. Black & Decker contends that Perotti's "artful pleading" does not deprive this Court of jurisdiction because Perotti's self-imposed limitation will not prevent him from obtaining damages in excess of $75,000. Black & Decker asserts that it has demonstrated that the amount in controversy is actually greater than the jurisdictional amount.

In *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292, 58 S.Ct. 586, 82 L.Ed. 845 (1938), the U.S. Supreme Court held that post-removal stipulations, affidavits, and pleading amendments that reduce a claim below the amount in controversy requirement do not deprive a federal district court of jurisdiction. In so holding, the Court explained, "If [plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though [plaintiff] would be justly entitled to more, the defendant cannot remove." *Id.* at 294, 58 S.Ct. 586.

In *Gafford v. General Elec. Co.*, the Sixth Circuit cited *St. Paul* for the proposition that "[g]enerally, since the plaintiff is master of the claim, a claim specifically less than the federal requirement should preclude removal." 997 F.2d 150, 157 (6th Cir.1993). However, the *Gafford* Court went on to note that state civil procedure rules "might enable a plaintiff to claim in his or her complaint an amount lower than the federal amount-in-controversy requirement in an attempt to defeat federal jurisdiction, while actually seeking and perhaps obtaining damages far in excess of the federal requirement." *Id.* at 157–58. The Court then stated, "Thus, courts have considered allowing removal where the defendant establishes a 'substantial likelihood' or 'reasonable probability' that the plaintiff intends to seek damages in excess of the federal amount-in-controversy requirement." *Id.* at 158.

The *Gafford* Court ended its discussion of self-imposed limitations on relief and ultimately held that the preponderance of the evidence standard applies to the different situation in which a plaintiff seeks to recover an unspecified amount that is not self-evidently greater or less than the federal amount in controversy requirement. *Id.* Thus, the Sixth Circuit's opinion in *Gafford* does not appear to articulate a governing rule for situations in which a plaintiff specifically claims less than the amount in controversy requirement.

In *Rogers v. Wal–Mart Stores, Inc.*, the Sixth Circuit reiterated the indefinite proposition that "*[g]enerally,* because the plaintiff is master of the claim, a claim specifically less than the federal requirement *should* preclude removal." 230 F.3d 868, 871 (6th Cir.2000) (emphasis added). However, after noting the possibility that a plaintiff could still exceed the amount in controversy level under state rules of civil procedure, the Court cited *Gafford* for the following rule: "In such situations, the removing defendant must show that it is 'more likely than not' that the plaintiff's claims meet the amount in controversy requirement." *Id.*

Put simply, *Gafford* does not appear to stand for the proposition that a preponderance of the evidence standard applies to cases in which a plaintiff specifically claims less than the $75,000 federal requirement. To the extent *Gafford* provides a rule, it seems to be either that (1) under *St.Paul,* a plaintiff can avoid removal by pleading below the amount in controversy requirement or (2) a substantial likelihood/reasonable probability standard more demanding

than a preponderance of the evidence standard applies to such situations.

It appears that no district court within the Sixth Circuit has endorsed the view that *Gafford* stands for the *per se* rule that a plaintiff can avoid removal by claiming less than the amount in controversy requirement. At least two district courts have interpreted *Gafford* to mean that a substantial likelihood/reasonable probability standard applies. *See In re Cardizem CD Antitrust Litigation,* 90 F.Supp.2d 819, 829 (E.D.Mich.1999); *Crosby v. America Online, Inc.,* 967 F.Supp. 257, 261 n. 2 (N.D.Ohio 1997).

This Court need not decide whether a plaintiff can automatically avoid removal to federal court by seeking less than the amount in controversy requirement in the complaint or whether a named plaintiff can so limit the relief sought by putative class members. As explained below, under either the preponderance of the evidence standard or the more demanding substantial likelihood/reasonable probability standard, Black & Decker has not met its burden of demonstrating that the amount in controversy requirement is met in this case.

**Amount in Controversy Calculation**

In a class action suit, a federal district court typically first determines whether the claims of the named plaintiff satisfy the amount in controversy requirement. If they do not, there is no subject matter jurisdiction. If they do, the court then decides whether the claims of the unnamed, putative class members satisfy the amount in controversy requirement. The claims of any putative class member that do not meet the requirement must be dismissed.

In this case, the complaint does not distinguish between the relief sought by the named plaintiff and the unnamed putative class members. Therefore, a single analy-

sis for both named and unnamed plaintiffs is appropriate.

Plaintiffs' underlying claims are separate and distinct. Each individual plaintiff has a separate interest in receiving a complete Jigsaw, in being free from deceptive and misrepresentative packaging, and in benefitting from the protections of state consumer protection laws. Black & Decker and Perotti do not contend otherwise.

However, the Court will examine each type of relief sought in order to determine whether plaintiffs' claims to that type of relief are "separate and distinct" or "common and undivided." If a claim for relief is separate and distinct, the value of all plaintiffs' claims for that type of relief cannot be aggregated in order to satisfy the amount in controversy requirement. *Snyder,* 394 U.S. at 335, 89 S.Ct. 1053. If a claim for relief stems from a common and undivided interest, aggregation is permitted. *Id.* Black & Decker must demonstrate, by at least a preponderance of the evidence, that the value of all types of relief sought totals over $75,000.

*Refund and Compensatory Damages*

Plaintiffs seek (1) recission, with a refund of the purchase price, *or* damages in the amount of the cost of a blade for the Jigsaw and (2) additional compensatory damages exceeding $25,000. These claims are separate and distinct. Each putative plaintiff has an independent interest in receiving a refund, the cost of the blade, and any other compensatory damages related to the purchase of his or her Black & Decker Jigsaw. If a plaintiff does not collect his or her refund or compensatory damages, no other plaintiff will receive the money in his or her place. Thus, the value of the refund or blade and other compensatory damages cannot be aggregated.

**818**

■ The amount of the refund and compensatory damages, therefore, must be apportioned equally among all of the class members. According to the affidavit of Jessica W. Wolma, Assistant Product Manager at Black & Decker, 154,685 Jigsaws are in inventory at the large mass merchant customers, such as Target, Walmart, and K–Mart. (Docket # 11 at Exhibit 1). Based on this statistic, it can safely be assumed that the putative class of Jigsaw purchasers numbers in the thousands. Assuming that each Jigsaw was purchased for about $20, as Perotti represents, and that there are only 1000 class members, the total value of the refund and compensatory damages to each class member would be $45 ($20 for the refund [1] and $25 for the additional compensatory damages that plaintiff claims will add up to at least $25,000). Black & Decker has made no showing that the amount of the refund and compensatory damages would exceed $45 per class member.

*Injunction*

Plaintiffs also seek an injunction against Black & Decker (1) requiring it to stop marketing the Jigsaw with a depiction of a blade on the packaging or (2) requiring it to include a blade with the Jigsaw. In order to determine whether the jurisdictional amount is met, it is necessary to determine the economic value of the injunction sought so that it can be added to the value of the other forms of relief sought. There are two issues surrounding the valuation of the injunction: (1) from whose perspective should the injunction be valued and (2) should the value of the injunction be aggregated or apportioned pro rata for jurisdictional purposes.

An injunction might be valued from the plaintiff's viewpoint (the value of the right plaintiff seeks to protect or the extent of the injury to be prevented) or from the defendant's point of view (the cost of complying with the injunction).[2] Although district courts within the Sixth Circuit recently have adopted different viewpoints, the Sixth Circuit has decided the issue. As Chief Judge Rice explained in *McIntire v. Ford Motor Company*, 142 F.Supp.2d 911, 921 (S.D.Ohio 2001), "Regardless of how the Court might choose to resolve the issue, this Court is not writing on a *tabula rasa*. The Sixth Circuit addressed this issue long ago, in the case of *Pennsylvania R. Co. v. City of Girard*, 210 F.2d 437 (6th Cir.1954)." In *Pennsylvania* and later in *Goldsmith v. Sutherland*, the Sixth Circuit held "that in injunction actions, the amount in controversy is ... the value of the right to be protected or the extent of the injury to be prevented." 426 F.2d 1395, 1398 (6th Cir.1970). Thus, the Sixth Circuit determined that injunctions should be valued from the plaintiff's viewpoint for jurisdictional purposes almost fifty years ago and has maintained that position.

■ The injunction has little or no economic value to the plaintiffs because it would serve to protect only *future* purchasers from allegedly deceptive packaging. Regardless of whether the value is aggregated or apportioned pro rata among the plaintiffs, the injunction is worth almost nothing to each plaintiff for jurisdictional purposes.

*Punitive Damages*

Plaintiffs seek punitive damages in an amount exceeding $25,000. The key issue

---

1. A blade has an even lower value of about $10, according to Perotti. Ms. Wolma's calculations suggest that a blade is worth just 12¢. (Docket # 11 at Exhibit 1).

2. These two possibilities have generated three district court approaches to valuing injunctions: plaintiff's perspective, defendant's perspective, and either party's viewpoint. *See McIntire v. Ford Motor Company*, 142 F.Supp.2d 911, 920 (S.D.Ohio 2001)

is whether the value of the punitive damages is aggregated or not.

In *Knauer*, Judge Katz of the Northern District of Ohio decided that "the Court must look to the complaint itself to see if the punitive damages claimed are collective or individual in nature." 102 F.Supp.2d at 449. Here, the claim for punitive damages is collective in nature because the plaintiffs have a common and undivided interest in penalizing Black & Decker's alleged deceptive and misrepresentative conduct. Moreover, if one plaintiff does not or cannot collect his or her share of the punitive damages, it is likely that the shares of the remaining plaintiffs will be increased. Thus, the value of the punitive damages can be aggregated and assigned to every class member for jurisdictional purposes.

There is no allegation in the complaint or evidence from Black & Decker that the punitive damages would amount to much more than $25,000. Black & Decker contends that "the amount of that award against a company the size of Black & Decker would likely exceed $75,000." (Docket # 11 at 18). Black & Decker provides no evidence to support this contention. Given the relatively small claims of each plaintiff, a large punitive damages award seems unlikely. Black & Decker also asserts that Ohio's consumer laws entitle Perotti to treble compensatory damages. However, under O.R.C. § 1345.09, a consumer may only recover "three times the amount of his actual damages or two hundred dollars, whichever is greater," and may not pursue this claim in a class action. In light of small value of the Jigsaw and blade, it is very unlikely that Perotti's actual damages would exceed $200. Thus, even assuming the class was not certified, the statute would not permit more in punitive damages than Perotti's $25,000 claim.

Accordingly, the claims for punitive damages amount to about $25,000 per plaintiff for jurisdictional purposes.

*Attorney's Fees and Other Fees*

Finally, plaintiffs seek attorney's fees, accountants' fees, and auditors' fees. Because plaintiffs' underlying claims are separate and distinct, attorney's fees are not aggregated when determining whether the amount in controversy requirement is met. *See Nelson v. Associates Financial Services Co.*, 79 F.Supp.2d 813, 821 (W.D.Mich.2000); *In Re Cardizem*, 90 F.Supp.2d at 834; *Crosby v. America Online, Inc.*, 967 F.Supp. 257, 262 (N.D.Ohio 1997). The same rationale must apply to other fees necessary for the maintenance and prosecution of the case.

Even if the various fees totaled $1 million, this would amount to only $1000 for each plaintiff of a class of 1000 plaintiffs.

*Total Amount in Controversy*

Based on the above determinations and figures, the amount in controversy is roughly $26,045 per plaintiff. This is far below the jurisdictional requirement of $75,000 per plaintiff. Thus, the claims of Perotti and the unnamed, putative class members do not meet the amount in controversy requirement.

As this Court lacks subject matter jurisdiction over the claims, remand is required.

## CONCLUSION

This Court lacks subject matter jurisdiction over this case because the requisite amount in controversy is not met. Plaintiff's motion to remand is granted.

IT IS SO ORDERED.