Aldene **HARRIS, et al., Plaintiffs,**

v.

**PHYSICIANS MUTUAL INSURANCE COMPANY, et al., Defendants.**

No. 3:02–CV–7393.

United States District Court, N.D. Ohio, Western Division.

Jan. 6, 2003.

Claudia A. Ford, Law Office of E.J. Leizerman, Michael J. Leizerman, Law Office of E.J. Leizerman, Toledo, OH, Randall J. Sunshine, Liner Yankelevitz Sunshine & Regenstreif, Robert Muller, Liner Yankelevitz Sunshine & Regenstreif, Stephen Z. Boren, Liner Yankelevitz Sunshine & Regenstreif, Santa Monica, CA, for Plaintiffs.

J. Scott Paul, McGrath, North, Mullin & Kratz, Omaha, NE, John S. Wasung, Kitch, Drutchas, Wagner & Kenney, Patrick B. Cavanaugh, Kitch Drutchas Wagner DeNardis Valitutti, Toledo, OH, Terrance P. O'Hare, McGrath, North, Mullin & Kratz, Omaha, NE, for Defendants.

## ORDER

CARR, District Judge.

Plaintiffs Aldene Harris and Willie Harris bring this suit individually and on behalf of a putative class of others similarly situated, claiming defendants Physicians Mutual Insurance Company and Physicians Life Insurance Company violated Ohio statutory and common law by selling worthless insurance policy riders to Ohio citizens. Plaintiffs brought the suit in the Lucas County Court of Common Pleas, and defendants removed it to this court. This court has jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a). Pending is plaintiffs' motion to remand to state court. For the following reasons, plaintiffs' motion shall be granted.

## BACKGROUND

Physicians Mutual Insurance Company and its wholly owned subsidiary, Physicians Life Insurance Company (collectively, "Physicians Mutual"), are Nebraska corporations doing business in the state of Ohio.

Plaintiffs, Ohio citizens, filed this action against Physicians Mutual on July 5, 2002, in the Lucas County Court of Common Pleas. They filed the action on behalf of themselves and a putative class alleged to consist of at least 1,000 other Ohio citizens who bought outpatient sickness benefit riders from defendants between 1993 and 1999.

The rider, known as the R359 rider, purported to provide outpatient sickness benefits to policyholders. Plaintiffs allege that Physicians Mutual denied covered claims under the rider on the ground that the claims were not submitted with medical bills itemizing room charges, though neither the rider nor Physicians Mutual's representations about the rider contained this requirement. Plaintiffs allege that

some policyholders had incurred the room charges, whether or not they were separately itemized on the medical bills.

The complaint states seven claims against the defendants: 1) misleading or deceptive advertising in violation of O.R.C. § 3923.16; 2) breach of contract; 3) breach of the covenant of good faith and fair dealing; 4) unfair, deceptive, or unconscionable acts or practices in violation of O.R.C. § 1345 *et seq.;* 5) unjust enrichment; 6) fraud; and 7) negligent misrepresentation.

The plaintiffs seek damages, injunctive relief, and fees and costs. More specifically, plaintiffs seek punitive damages under their third and sixth claims, breach of the covenant of good faith and fair dealing and fraud, in an amount "sufficient to punish Physicians Mutual for engaging in this conduct and to deter similar conduct on their part in the future." (Doc. 1, Exh. A, p. 15). The plaintiffs do not specifically ask for disgorgement as a remedy for the fifth claim, unjust enrichment, but disgorgement is a cognizable remedy for that claim. *Gavriles v. Verizon Wireless,* 194 F.Supp.2d 674, 681 (E.D.Mich.2002). Plaintiffs' reply to defendants' response to plaintiffs' motion to remand states that plaintiffs will seek disgorgement.

On August 2, 2002, defendants removed the case to this court, pursuant to 28 U.S.C. § 1332(a)(1) and § 1441(a). Defendants argue the amount in controversy is more than $75,000, the minimum jurisdictional requirement for this court, because the plaintiffs' claims for punitive damages and disgorgement should be aggregated.

Plaintiffs moved to remand the case, arguing that neither type of damages may be aggregated to satisfy the amount-in-controversy requirement.

## STANDARD OF REVIEW

■ Federal courts have jurisdiction over cases in which citizenship is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). A defendant who removes a case to federal court has the burden of establishing the court's jurisdiction. *Coyne v. Am. Tobacco Co.,* 183 F.3d 488, 493 (6th Cir.1999). Generally, a civil case brought in state court may be removed by a defendant to federal court if it could have been brought there originally. *Gafford v. Gen. Elec. Co.,* 997 F.2d 150, 155 (6th Cir.1993); *see* 28 U.S.C. § 1441(a). Where, as here, the plaintiff's damages are unspecified, courts generally require that a defendant establish the jurisdictional amount by a preponderance of the evidence. *Id.* at 158. Where the basis for federal jurisdiction appears doubtful, any doubt should be resolved in favor of remand. *Long v. Bando Mfg. of Am.,* 201 F.3d 754, 757 (6th Cir.2000).

## DISCUSSION

The Supreme Court ruled in 1911 that whether plaintiffs' claims may be aggregated to satisfy the amount-in-controversy requirement depends on whether their claims are "separate and distinct" or "common and undivided." *Troy Bank v. G.A. Whitehead & Co.,* 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911).

> When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite judicial amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

*Id.*

■ As a general rule, where a defendant seeks removal of a diversity class

action suit in which the plaintiffs' claims are separate and distinct, the defendant must show each class member's claim exceeds the jurisdictional amount in controversy. *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).[1] Therefore, aggregation of the value of plaintiffs' separate and distinct claims is not permitted. *Id.* The fact that plaintiffs have filed the suit as a class action does not change this rule. *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). If a class member's individual claim does not meet the jurisdictional amount in controversy, he or she must be dismissed from the case. *Id.* at 295, 94 S.Ct. 505; *see also Snyder,* 394 U.S. at 336, 89 S.Ct. 1053.

In the Sixth Circuit, "[a]n identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased." *Sellers v. O'Connell,* 701 F.2d 575, 579 (6th Cir.1983). Conversely, plaintiffs' claims are separate and distinct, and thus their claims may not be aggregated, "[w]here a group of plaintiffs litigate individual cash claims the amount of which remain unaffected by the results obtained by fellow plaintiffs." *Id.*

When determining whether one plaintiff's share will affect the other plaintiffs' shares of the award, Sixth Circuit courts look to the nature of the right plaintiffs assert, not whether the vindication of that right would lead to a single pool of money that would be allocated among the plaintiffs. *Sylvester v. Daimler–Chrysler Corp.,* No. 02–CV–0567, 2002 U.S. Dist. LEXIS 17989, at —— 5–6 (N.D.Ohio May 30, 2002).

█ An interest is common and undivided where only the class as a whole is entitled to the requested relief, and a class member's rights are separate when he is trying to obtain relief to which any member of the class is entitled. *Sylvester,* 2002 U.S. Dist. LEXIS 17989, at *6 (citations omitted); *see also Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, at 1262 (11th Cir.2000) ("[T]he presence of a 'common and undivided interest' is rather uncommon, existing only when the defendant owes an obligation to the group of plaintiffs as a group and not to the individuals severally."). Here, the class members' rights are not common and undivided, because they could maintain individual actions against the defendants. That is, not only the class *as a whole* is entitled to the requested relief.

█ In this case, plaintiffs seek compensatory damages. Each of the 52,162 potential Ohio plaintiffs paid defendants an average of $27.18 for the rider.[2] These claims cannot be aggregated to satisfy the jurisdictional requirement, under the general rule of non-aggregation. *Snyder,* 394 U.S. at 335, 89 S.Ct. 1053; *see also Morrison,* 228 F.3d at 1264 ("[W]hen multiple plaintiffs assert rights arising from individual insurance policies, their claims [for

1. Although no class has been certified, this court should treat the suit as a class action for purposes of the motion to remand. *See* 3B J. Moore, *Moore's Federal Practice,* ¶ 23.50 (2d ed. 1985) ("In the interim between the commencement of the suit as a class action and the court's determination as to whether it may be so maintained it should be treated as a class suit.").

2. Defendants claim they sold 55,934 riders to 52,162 Ohio customers between 1993 and 1998. The riders had a monthly premium cost of about $2.69. In all, defendants report, they collected $1,418,013 in rider premiums from Ohio citizens between 1993 and 2001, or an average of $27.18 per customer. While these figures do not exactly represent plaintiffs' putative class, those Ohio citizens who bought the riders between 1993 and 1999, they remain instructive.

compensatory damages] are separate and distinct, and accordingly, may not be aggregated.").

Defendants do not argue that the compensatory damages claims should be aggregated, or that any individual plaintiff's claim exceeds $75,000.[3] Defendants also have not attempted to establish that plaintiffs' claims for attorneys' fees or injunctive relief should be aggregated.

Defendants argue, however, that the plaintiffs would have a common and undivided interest in punitive damages and unjust enrichment damages. I consider those arguments in turn.

## I. Punitive Damages

■ The Sixth Circuit has not ruled on the question of whether punitive damages claims may be aggregated for purposes of determining whether the jurisdictional amount in controversy has been satisfied. All circuit courts to consider the issue, however, have concluded that punitive damages claims may not be aggregated for this purpose.[4]

These cases conclude that plaintiffs in a class action do not have a common and undivided interest in punitive damages claims. The Tenth Circuit's opinion in *Martin* is representative of the reasoning in these cases:

[T]he "paradigm cases" allowing aggregation of claims "are those which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res." The court pointed out that even though a class claim for punitive damages may create a single pool of recovery, "a common interest in a pool of funds is not the type of interest that permits aggregation of claims under the 'common fund' doctrine." Each class member could sue separately for punitive damages and have his right to recovery determined without implicating the rights of every other person claiming such damages. Because a class member's right to punitive damages is separate, distinct, and independent from those of other class members, the class claim for such damages does not seek to enforce a single right in which the class has a common and undivided interest. Punitive damages therefore may not be aggregated in a class action and attributed in total to each member of the class.

*Martin*, 251 F.3d at 1292–93 (quoting *Gilman*, 104 F.3d at 1430–31).

Some circuits have found that punitive damages should not be aggregated where

---

**3.** Because no individual plaintiff's claim exceeds the jurisdictional amount-in-controversy requirement, this court is not required to address the issue of whether or not it could exercise supplemental jurisdiction under 28 U.S.C. § 1367 over members of the class who do not meet the amount-in-controversy requirement.

**4.** *See, e.g., Crawford v. F. Hoffman–La Roche Ltd.,* 267 F.3d 760, 765–66 (8th Cir.2001); *Gibson v. Chrysler Corp.,* 261 F.3d 927, 946–47 (9th Cir.2001); *In re Ford Motor Co. and Citibank (South Dakota), N.A.,* 264 F.3d 952, 963 (9th Cir.2001), *cert. dismissed,* —— U.S. ——, 123 S.Ct. 584, 154 L.Ed.2d 1, 71

U.S.L.W. 3264 (U.S. Oct. 15, 2002) (No. 01–896); *Martin v. Franklin Capital Corp.,* 251 F.3d 1284, 1293 (10th Cir.2001); *H & D Tire & Automotive–Hardware, Inc. v. Pitney Bowes, Inc.,* 227 F.3d 326, 329–30 (5th Cir.2000), *reh'g and reh'g en banc denied,* 250 F.3d 302, 304–05 (5th Cir.2001); *Morrison,* 228 F.3d at 1264–65; *Cohen v. Office Depot. Inc.,* 204 F.3d 1069, 1076–77 (11th Cir.2000) ("*Cohen II*"); *Ard v. Transcontinental Gas Pipe Line Corp.,* 138 F.3d 596, 600–02 (5th Cir.1998); *In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 608–09 (7th Cir.1997); *Gilman v. BHC Secs., Inc.,* 104 F.3d 1418, 1430–31 (1997).

plaintiffs' claims arose under separate, individual contracts with defendants. In *Gilman*, the Second Circuit noted that such plaintiffs may share an interest in receiving punitive damages, but stated that this interest "has nothing to do with whether—prior to litigation—they jointly held a single title or right in which each possessed a common and undivided interest." 104 F.3d at 1430; *see also In re Ford*, 264 F.3d at 959–60 ("Each plaintiff charged purchases and accrued rebates individually, not as a group. Thus, prior to litigation, they shared no common interest."). The court in *Gilman* held:

> [P]unitive damages asserted on behalf of a class may not be aggregated for jurisdictional purposes where, as here, the underlying cause of action asserted on behalf of the class is not based upon a title or right in which the plaintiffs share, and as to which they claim, a common interest. To hold otherwise, and aggregate punitive damages even when the actual damages could not be aggregated, would eviscerate the holdings of *Snyder* and *Zahn* and would run counter to the strict construction of the amount-in-controversy requirement those cases mandate.

104 F.3d at 1431 (citation omitted).

This reasoning was adopted in *Crosby v. America Online, Inc.*, 967 F.Supp. 257, 262 (N.D.Ohio 1997), in which the court followed *Gilman* and held that punitive damages may not be aggregated or viewed as part of a common fund, because plaintiffs' claims were based on their individual contracts with defendant corporation.

Until quite recently, the law in two circuits favored aggregation of punitive damages. In *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1333–34 (5th Cir.1995), the Fifth Circuit held that punitive damages are "fundamentally collective" and aggregated the alleged punitive damages in determining the jurisdictional amount in con-

troversy. The Fifth Circuit in 1998 limited *Allen* in *Ard*, 138 F.3d at 602, and two years later, the Fifth Circuit held that punitive damages should not be aggregated. *H & D*, 227 F.3d at 329–30; *reh'g and reh'g en banc denied*, 250 F.3d at 304–05.

There has been a similar reversal in the Eleventh Circuit. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1358–59 (11th Cir.1996), held that punitive damages represent a common and undivided interest for purposes of the amount-in-controversy requirement. In *Cohen v. Office Depot, Inc.*, 184 F.3d 1292 (11th Cir.1999) ("*Cohen I*"), the Eleventh Circuit followed *Tapscott*, but on rehearing a year later, the court reversed. *Cohen II*, 204 F.3d at 1076–77.

While the law in many circuits is clear that punitive damages claims may not be aggregated to meet the amount in controversy required for federal diversity jurisdiction, the law is less clear in the Sixth Circuit because district courts within the circuit have issued conflicting opinions.

Defendants argue that this court should follow *Romstadt v. Apple Computer, Inc.*, No. 94–CV–7612 (N.D.Ohio Aug. 9, 1996) (order declining to adopt magistrate's report and recommendation and denying defendant's motion to dismiss class claims), in which this court followed *Allen* and *Tapscott* and allowed plaintiffs to aggregate their claims for punitive damages in a putative class action. Because *Allen* and *Tapscott* subsequently were disavowed by their respective circuits, however, defendants cannot argue persuasively that this court should follow the *Romstadt* decision.

Similarly, defendants argue that this court should follow *Knauer v. Ohio State Life Ins. Co.*, 102 F.Supp.2d 443, 449 (N.D.Ohio 2000), issued before the Fifth Circuit abandoned *Allen* in its *H & D* decisions, and also before the Eleventh Circuit's decision in *Morrison*, the Tenth Circuit's decision in *Martin*, the Ninth Cir-

cuit's decisions in *Gibson* and *In re Ford,* and the Eighth Circuit's decision in *Crawford.*

In *Knauer,* the court acknowledged the then-existing split within federal circuit courts on whether punitive damages claims may be aggregated, and decided to follow neither the Second Circuit's opinion in *Gilman* nor the Fifth and Eleventh Circuit's opinions in *Allen* and *Tapscott.* The court held that "neither position should be a per se rule for all class actions involving punitive damage claims. Rather, the Court must look to the complaint itself to see if the punitive damages claimed are collective or individual in nature." 102 F.Supp.2d at 449. The complaint in *Knauer* prayed for an order awarding " 'Plaintiffs and the Class punitive damages in an amount to be determined at trial....' " and the court determined this to be a collective claim, finding that "[i]f one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs will be increased." *Id.*

*Knauer's* suggestion to rely on the wording of the complaint to determine whether punitive damages should be aggregated was followed in *Perotti v. Black & Decker (U.S.) Inc.,* 205 F.Supp.2d 813, 819 (N.D.Ohio 2002) and *Durant v. Servicemaster Co.,* 147 F.Supp.2d 744, 751 (E.D.Mich.2001).

Other district courts within the Sixth Circuit, however, have declined to follow *Knauer* and have held that punitive damages claims cannot be aggregated. *See Sylvester,* 2002 U.S. Dist. LEXIS 17989, at —— 8–9 (finding that *Knauer* relied on disfavored cases, and that each class member in *Sylvester* had a separate and distinct right to punitive damages); *Troy v. Physicians Mutual Insurance Co.,* No. 01–73098, at 5–6 (E.D.Mich. Dec. 6, 2001) (order granting plaintiffs' motion to remand) (finding defendant's reliance on *Knauer* was "misplaced" due to that opin-ion's reliance on *Allen* and *Tapscott,* and that defendant's reliance on *Durant* also was misplaced because "[t]he *Durant* Court's decision principally relies on *Knauer* and thus is similarly unpersuasive"); *Bowers v. Jefferson Pilot Financial Ins. Co.,* 166 F.Supp.2d 552, 558 (E.D.Mich.2001) ("Defendant's reliance upon the Northern District of Ohio's opinion in *Knauer* ... is similarly unpersuasive").

The Eastern District of Michigan's decision in *Troy v. Physicians Mutual* is especially persuasive, because *Troy* is another class action against Physicians Mutual, filed by Michigan residents who purchased the outpatient benefits rider at issue in this case. Defendants filed a motion to remove that case to federal court, arguing that the putative class members' claims for unjust enrichment and punitive damages should be aggregated to satisfy the federal jurisdictional requirement, and the court disagreed, remanding the case to state court.

Because subsequent federal court decisions have criticized *Knauer* and bolstered the viewpoint epitomized in *Gilman,* I will follow the majority of federal courts and find plaintiff's punitive damages claims cannot be aggregated. Defendants cannot aggregate plaintiffs' claims for punitive damages, because the claims do not create a "common and undivided interest" in any recovery. The claims for punitive damages, like the individual contract claims on which they are based, are inherently "separate and distinct." Defendants, therefore, have failed to prove by a preponderance of the evidence that each plaintiff's claim for punitive damages will meet the $75,000 jurisdictional minimum. In fact, punitive damages would have to approach $4 billion for each plaintiff's claim to meet the federal minimum amount in controversy.

## II.  Unjust Enrichment

Defendants argue that the plaintiffs' unjust enrichment claim, seeking disgorgement of "income resulting from the sale of the Rider," (Doc. 1, Exh. A, at ¶ 50), satisfies the amount-in-controversy requirement, The defendants received $1,418,013 from the plaintiffs.  Defendants argue that if they were ordered to disgorge these funds, the plaintiffs would have a common and undivided interest in the funds, thus permitting their aggregation for purposes of satisfying the jurisdictional amount in controversy.

■■■  In an action of restitution in which the benefit received was money, the measure of recovery for this benefit is the amount of money received.  Restatement (First) of Restitution § 150 (1937).  Disgorgement is an equitable remedy designed to force a defendant to give up the amount equal to the defendant's unjust enrichment.  *Gavriles*, 194 F.Supp.2d at 681 (citing *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir.1985)).

The analysis for determining whether disgorgement funds should be aggregated is substantially similar to the analysis for determining whether punitive damages should be aggregated.  *See, e.g., In re Ford*, 264 F.3d at 963.  Not surprisingly, then, circuit courts ruling on the issue hold that disgorgement funds may not be aggregated to meet the jurisdictional minimum.  *See id.* at 962; *Morrison*, 228 F.3d at 1264; *Gilman*, 104 F.3d at 1426–28.

■■■  These courts agree that where the plaintiffs' individual (and thus non-aggregated) claims for damages are based on individual transactions with defendants, unjust enrichment claims based on those transactions also cannot be aggregated. In *Morrison*, for example, the class was comprised of insurance customers who alleged they had overpaid their premiums. The Eleventh Circuit ruled their claims for unjust enrichment could not be aggregated, likening the unjust enrichment claims to their individual claims for compensatory damages:

> The members of the Policyholder Class are asserting rights arising from their individual insurance policies, and if successful, they will recover the amount of excessive premiums each paid under his own policy.  The fact that this recovery may be obtained under an equitable theory of unjust enrichment does not convert separate and distinct claims for damages into a fund in which the class members have a common and undivided interest.

228 F.3d at 1264.

The Ninth Circuit reached a similar conclusion in *In re Ford*, finding that "simply because the plaintiffs request disgorgement of 'all benefits' does not establish that the right which they seek to enforce is collective."  264 F.3d at 961.  Rather, the court found, "[i]n the disgorgement context, the germane question becomes whether 'the plaintiffs' claims are consistent with a demand for damages based on their individual transactions with [the defendants].'" *In re Ford*, 264 F.3d at 961, quoting *Gilman*, 104 F.3d at 1425 n. 8.

The court in *In re Ford* mirrored its reasoning in the punitive damages context, finding that because defendants would not disgorge the allegedly ill-gotten benefits to the plaintiff class as a class, the plaintiffs would not have a common and undivided interest in the disgorgement funds: "[P]laintiffs charged purchases and accrued rebates individually, not as a group.  Thus, prior to litigation, they shared no common interest.  Each cardholder could have brought a separate and individual action to recover the alleged benefits." 264 F.3d at 962.

The Sixth Circuit has not ruled on this issue.  District courts within the Sixth Circuit, however, have split over whether

class members' claims for unjust enrichment may be aggregated for jurisdictional purposes.

District courts within the Sixth Circuit held that such claims could be aggregated in *Durant,* 147 F.Supp.2d at 749–51; *Everett v. Verizon Wireless, Inc.,* No. 00–CV–7763 (N.D.Ohio Feb. 21, 2001) (order denying plaintiffs' motion to remand); and *In re Cardizem CD Antitrust Litig.,* 90 F.Supp.2d 819, 825–26 (E.D.Mich.1999). These cases are distinguishable or otherwise unpersuasive.

In *In re Cardizem,* plaintiffs alleged violations of the antitrust laws and related claims. Plaintiff class sought disgorgement of millions of dollars that one defendant corporation received from another defendant corporation in an allegedly illegal and inequitable transaction. The court held that this claim for unjust enrichment was an integrated claim arising from a common right of the class. 90 F.Supp.2d at 826. In reaching this conclusion, the court relied on the fact that plaintiffs' claim "does not depend, rely upon, or arise out of the vindication of individual rights of the putative class members." *Id.* (citation omitted). Rather, plaintiffs' possible recovery "is either all or nothing" and will be divided pro rata "regardless of the actual damages proved by each plaintiff and regardless of the number of plaintiffs in the purported class." *Id.* Furthermore, plaintiffs' claim for disgorgement is "in addition to and separate from individual claims for compensation for overpayments." *Id.* Plaintiffs had a "common and undivided interest," therefore, in any recovery. *Id.* at 825.

In *Durant,* plaintiffs in a consumer fraud case sought unjust enrichment damages. The district court, following *Knauer,* held that the plaintiffs would have a common and undivided interest in any disgorgement fund, and retained jurisdiction over the case. 147 F.Supp.2d at 751.

As noted, the Eastern District of Michigan's opinion in *Troy v. Physicians Mutual* discredited *Durant* for its reliance on *Knauer.* No. 01–73098, at 6. *Everett,* too, relies principally on *Knauer,* and does not control here. No. 00–CV–7763, at 4–6.

█ Again, the opinion in *Troy* is particularly helpful in analyzing this case. The court in *Troy* held that plaintiffs' claim for unjust enrichment would not result in plaintiffs' common and undivided interest in disgorgement funds, because:

> [i]f one of the putative class members cannot or does not collect his premiums, the share of damages collected by the remaining plaintiffs will not be increased. As alleged, each putative class member's damages for Defendants' unjust enrichment is tied to the amount of premiums each paid to Defendants for their Outpatient Rider and any interest income earned on their individual premium payments.

*Troy,* No. 01–73098, at 3.

In *Troy,* the court distinguished *Cardizem* based on the fact that no plaintiff in the class sustained cognizable damages apart from any other plaintiff. The success or failure of the claim was inherently collective. In this case, by contrast, plaintiffs sue on their individual contracts with defendants, and their related claims for the disgorgement of defendants' allegedly ill-gotten proceeds may not be aggregated. *See also Pope v. The Independent Order of Foresters,* No. 3:01–626–S, 2002 WL 1733606, at *2, 2002 U.S. Dist. LEXIS 13550, at *6–7 (W.D.Ky. July 23, 2002) (where plaintiffs sought reimbursement for allegedly fraudulent insurance payments, "damages sought are therefore better considered as reimbursement to the individual plaintiffs than as disgorgement to a common fund"); *Krieger v. Gast,* 197 F.R.D. 310, 317 (W.D.Mich.2000) (plaintiffs asserted claim for unjust enrichment and sought

disgorgement as a remedy; court found that the claim should not be aggregated for jurisdictional purposes).

In this case, a successful claim for unjust enrichment would not result in a single, indivisible res. Rather, each member of the putative class has a divisible interest in the amount of money he or she paid for an allegedly worthless rider, an amount of money averaging less than $30 per potential plaintiff. Plaintiffs seek to recover the amount of money paid to defendants for each potential plaintiff's premiums. Each class member's individual claim for compensatory damages is inextricably bound to each class member's claim for restitution—a claim which each member could assert individually. I will follow the majority of federal courts and find that plaintiffs' individual claims for unjust enrichment may not be aggregated to meet the jurisdictional amount in controversy.

## CONCLUSION

■ Neither plaintiffs' claims for punitive damages nor for unjust enrichment may be aggregated for purposes of satisfying the amount in controversy required for federal jurisdiction. Defendants have failed to prove by a preponderance of the evidence that the members of the putative class have at least $75,000 in controversy.

It is, therefore, ordered that Plaintiffs' motion to remand to the Lucas County Court of Common Pleas is hereby granted.

It is so ordered.